### FRANK KINNEY v. THE STATE.

No. 1414. Decided February 7, 1912.

Rehearing denied February 28, 1912.

**1.—Murder—Bills of Exception—Practice on Appeal—Article 723.**

Article 723, Code Criminal Procedure, provides that a judgment shall not be reversed unless the error in the charge was excepted to at the time of the trial, or is complained of in the motion for new trial, and where this was not done, the same can not be considered on appeal.

**2.—Same—Amended Motion for New Trial—Practice on Appeal.**

Where the amended motion for a new trial brought the matter of the objections to the court's charge properly up for review, this court will consider them, although the bills of exception thereto were not presented to the court; and the matter of filing the amended motion after two days had elapsed was a matter of discretion of the trial court.

**3.—Same—Bills of Exception—Practice on Appeal.**

Where a bill of exceptions is refused by the trial court, it should not be contained in the record, and there being no bill of bystanders, there is nothing to review.

**4.—Continuance—Want of Diligence.**

Where, in a second application for continuance, the diligence was contested, and overruled for want of diligence, there was no error.

**5.—Same—Evidence—Declarations of Third Parties.**

Where, upon trial of murder, the facts indicated that defendant knew that his codefendant was going to ask for a gun, and the defendant took up the conversation of his codefendant with certain third parties with reference to the gun, and was close enough to hear what his codefendant said to said parties, there was no error in admitting their testimony with reference thereto.

**6.—Same—Charge of Court—Principals.**

Where, upon trial of murder, the evidence showed that defendant and his codefendant were acting together just before the homicide in getting the gun with which defendant shot deceased, etc., there was no error in the court's charge on principals wherein he instructed the jury to disregard the testimony of third parties with said codefendant, unless they believed he and defendant were acting together.

**7.—Same—Evidence—Res Gestae.**

Upon trial of murder, the declarations of deceased and a third party at the time of and just after the shooting by defendant of deceased, with reference to such shooting, was admissible as res gestae.

**8.—Same—Evidence—Conversation.**

Where, upon trial of murder, the defendant had elicited portions of a conversation between a State's witness and the deceased, which occurred just

before the homicide, there was no error in permitting the State, on cross-examination, to bring out the entire conversation.

### 9.—Same—Evidence—Declarations of Third Parties.

Where the statements of a third party were hearsay, with reference to delivering a pistol to deceased, there was no error in excluding them.

### 10.—Same—Evidence—Declarations of Defendant.

Upon trial of murder, there was no error in excluding the declarations of defendant as to what he said to a number of people about going hunting, prior to the homicide.

### 11.—Same—Charge of Court—Manslaughter.

Where, upon trial of murder, the evidence did not raise the issue of manslaughter, there was no error in the court's failure to charge thereon.

### 12.—Same—Charge of Court—Murder in the First Degree.

Where defendant was convicted of murder in the second degree, objection to the court's charge on murder in the first degree will not be considered on appeal.

### 13.—Same—Charge of Court—Self-Defense—Words and Phrases.

Where, in the court's charge on the law of self-defense, the sentence complained of by defendant did not appear, and said charge was a full and fair presentation of the issue of self-defense made by the evidence, there was no error.

### 14.—Same—Argument of Counsel.

Where the court refused a bill of exceptions to the alleged argument of State's counsel, the presumption is that no such language was used; there being no bystander's bill.

### 15.—Same—Charge of Court—Provoking the Difficulty.

Where, upon trial of murder, the court fairly submitted the issue of self-defense arising from the evidence, and also, submitted a charge on provoking the difficulty, although the evidence hardly raised this latter issue, yet where the facts were such that the charge on provoking the difficulty could not have resulted in injury to the defendant, there was no reversible error.

### 16.—Same—Practice on Appeal—Rehearing—Statutes Construed.

Where appellant presented a question for the first time in the Appellate Court, which was not raised by the motion for new trial or bill of exceptions, and even not in defendant's first brief, but upon motion for rehearing, the same came too late to be considered. Article 723, Code Criminal Procedure.

### 17.—Same—Charge of Court—Provoking Difficulty.

Where the court's charge on provoking the difficulty could not have abridged defendant's right of self-defense and defendant's acts and declarations before and at the time of the homicide were such as to support the State's theory of an assassination, although defendant claimed self-defense, a charge on provoking the difficulty, while scarcely raised by the evidence, did not present reversible error, where a full and complete charge on self-defense was submitted to the jury.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Woods, Graham & Harris* and *Green & Boyd,* for appellant.—The

court erred in permitting the witness Kerr, while on the stand as a witness in behalf of the State, to testify over appellant's objections to declarations made by a bystander at the place of the homicide. Said witness Kerr was permitted to testify that after the deceased was shot, that Fisher, who was present and witnessed the shooting, hallowed to the appellant, "You son-of-a-bitch, what are you doing?" This testimony was injurious to the appellant because it was calculated to lead the jury to believe the appellant was in the wrong and that he shot the deceased without cause. The appellant was certainly not bound by the opinion of a bystander, or what a bystander might say or do after the shooting. The testimony, at best, was hearsay, irrelevant and immaterial to any issue in the case, and was not res gestae; and was not admissible for any purpose. Holt v. State, 9 Texas Crim. App., 571; Felder v. State, 23 Texas Crim. App., 477; Bluman v. State, 33 Texas Crim. Rep., 43; Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122; Clements v. State, 1 Texas Crim. Rep., 161, 134 S. W. Rep., 728; Evers v. State, 31 Texas Crim. Rep., 318; Easterwood v. State, 34 Texas Crim. Rep., 400; Burke v. State, 15 Texas Crim. App., 156; Kennedy v. State, 19 Texas Crim. App., 618; Kemper v. State, 138 S. W. Rep., 1025.

The court erred in permitting the witness, George Pete, while on the stand as a witness for the State, to testify to the statement made by the deceased after he was shot and the defendant had left the saloon where the difficulty took place. Pool v. State, 23 S. W. Rep., 891; Dowlen v. State, 14 Texas Crim. App., 61; Irby v. State, 25 Texas Crim. App., 203; Lockhart v. State, 53 Texas Crim. Rep., 589, 111 S. W. Rep., 1024; 11 Enc. of Ev., pp. 382-384; Segura v. State, 16 Texas Crim. App., 221.

The court erred in admitting the witnesses, L. R. McFarlan and H. S. Kahn, to testify to statements made in their presence by John Kuhlman in the absence of the appellant, over appellant's objections. We submit that the State utterly failed to show a conspiracy or to introduce testimony justifying or excusing the admission of statements made by Kuhlman, and that the testimony was hearsay, prejudicial, and that it was material error to admit said testimony. Gill v. State, 56 Texas Crim. Rep., 202, 119 S. W. Rep., 684; Choice v. State, 52 Texas Crim. Rep., 285, 106 S. W. Rep., 387; Ed. Rhodes v. State, 39 Texas Crim. Rep., 332; Newton v. State, 62 Texas Crim. Rep., 622, 138 S. W. Rep., 708; Wicks v. State, 28 Texas Crim. App., 448; Martin v. State, 25 Texas Crim. App., 557; Luttrell v. State, 31 Texas Crim. Rep., 493; Blain v. State, 33 Texas Crim. Rep., 236; Arnold v. State, 9 Texas Crim. App., 435; Menges v. State, 25 Texas Crim. App., 710; Sessions v. State, 37 Texas Crim. Rep., 62; Richards v. State, 55 Texas Crim. Rep., 278, 110 S. W. Rep., 432.

If the court should hold that Fisher's statement to the witness Oliver was not admissible in behalf of appellant, because it was hearsay, even though the State did not object to said testimony because

it was hearsay, then certainly the fact that the witness Oliver went to the saloon where the homicide was committed, the next morning, to look for his pistol, was admissible as a circumstance, to show that the deceased had a pistol when he was shot, as testified to by appellant. 1 Starkie on Ev., p. 65; 3 Rice on Ev., p. 128.

According to appellant's testimony there was nothing done or said by him to cause the deceased to assault him. He had said nothing to deceased, and the only time he spoke in the saloon before the shot was to speak to J. A. Fisher in a friendly manner and ask him if he was ready to go. This certainly did not authorize or excuse the court in charging upon the issue of provoking a difficulty, and thereby limiting the appellant's right of self-defense; appellant was entitled to an affirmative charge upon his right of self-defense, unhampered and unlimited. We respectfully submit to the court that in all of the testimony introduced by the State and the defendant, there is not one word to show that the appellant provoked the deceased to attack him. If the court assumes and charges on a theory not supported or indicated by the evidence, it is radical error and fatal to the conviction. Ross v. State, 10 Texas Crim. App., 455; Taylor v. State, 13 Texas Crim. App., 184; Hardin v. State, 13 Texas Crim. App., 192; Stewart v. State, 15 Texas Crim. App., 598; Lynch v. State, 24 Texas Crim. App., 350; Thomas v. State, 34 Texas Crim. Rep., 481.

The fact that appellant went to the place of the homicide armed did not justify the trial court in limiting his right of self-defense by charging the jury upon the theory of provoking a difficulty. Grayson v. State, 57 S. W. Rep., 808; Hall v. State, 42 Texas Crim. Rep., 444; Crow v. State, 48 Texas Crim. Rep., 419; Lucas v. State, 49 Texas Crim. Rep., 135; McChandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 672; Casner v. State, 43 Texas Crim. Rep., 12; Pollard v. State, 45 Texas Crim. Rep., 121; Rees v. State, 49 Texas Crim. Rep., 242.

The acts and declarations of John Kuhlman, whether charged as a codefendant with the party on trial or not, was not admissible against the party on trial, except on the proposition that a person whose acts and declarations are thus admitted had entered into a conspiracy with the party on trial to commit the act for which defendant was being tried, and such proof of a conspiracy would have to be made independent of, and outside of, the alleged acts and declarations of the alleged coconspirator, Kuhlman, and that such declarations were made pending the conspiracy. Otherwise, the testimony would of necessity be hearsay, and not admissible for any purpose. Lunttrell v. The State, 31 Texas Crim. Rep., 493; Blain v. State, 33 Texas Crim. Rep., 236; Harding v. State, 4 Texas Crim. App., 355; Loggins v. State, 8 Texas Crim. App., 434; Davis v. State, 9 Texas Crim. App., 363; Cox v. State, 8 Texas Crim. App., 254; Choice v. State, 54 Texas Crim. Rep., 517, 106 S. W. Rep., 387; Gill v. State,

56 Texas Crim. Rep., 285, 119 S. W. Rep., 684, and authorities cited; Ed. Rhodes v. State, 39 Texas Crim. Rep., 332.

Because the said charge assumes that an important and criminative fact had been proved against appellant, and charges upon an issue that was not in the case, for which this case should be reversed. Gardner v. State, 11 Texas Crim. App., 265; Ross v. State, 10 Texas Crim. App., 455; Whitaker v. State, 12 Texas Crim. App., 436; Johnson v. State, 13 Texas Crim. App., 378; Taylor v. State, 13 Texas Crim. App., 184; Hardin v. State, 13 Texas Crim. App., 192; Stewart v. State, 15 Texas Crim. App., 598; Lynch v. State, 24 Texas Crim. App., 350; Thomas v. State, 34 Texas Crim. App., 481.

We submit that there is no evidence in the record of this case to base this charge upon, and that said charge is an illegal and unlawful curtailment and limitation of appellant's right to defend himself. We submit further, the giving of this charge was material and fundamental error, for which this case should be reversed and remanded. Comegys v. State, 62 Texas Crim. Rep., 231, 137 S. W., 349; Hill v. State, 35 Texas App., 371.

It was the duty of the court to instruct the jury on the law of manslaughter in this case; and failing to do so is error, for which the case should be reversed.

"A." "An overt act, which is insufficient to show that deceased was about to execute a threat made to the defendant, and which may be insufficient to justify the killing, or even to raise the issue of self-defense, is sufficient to raise the issue of manslaughter." Harris v. State, 15 S. W. Rep., 172; Neyland v. State, 13 Texas Crim. App., 536; Howard v. State, 23 Texas Crim. App., 265; Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. Rep., 80; Alexander v. State, 63 Texas Crim. Rep., 102, 138 S. W. Rep., 721, and dissenting opinions by Judge Davidson.

"B." "If in a murder case there is evidence which, however inconclusively, tends to prove facts, from which the jury might deduce the finding of manslaughter, it is incumbent on the trial court to give the law of manslaughter in the charge to the jury; and it should be given affirmatively, directly and pertinently to the theory of the case indicated by such evidence." Neyland v. State, 13 Texas Crim. App., 536; Orman v. State, 24 Texas Crim. App., 495, and cases cited; Bonner v. State, 29 Texas Crim. App., 223, and cases cited; Rutherford v. State, 15 Texas Crim. App., 236; Hobbs v. State, 16 Texas Crim. App., 517; McLaughlin v. State, 10 Texas Crim. App., 340.

"C." "Adequate cause" is not limited to the illustrations enumerated in the code. Any condition or circumstance which is capable of creating, and does create, sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, is adequate cause. "Adequate cause" is estimated by passion. Williams v. State, 15 Texas Crim. App., 617; Neyland v. State, 13

Texas Crim. App., 536; Orman v. State, 24 Texas Crim. App., 495; Bonner v. State, 29 Texas Crim. App., 223, and cases cited. Swain v. State, 48 Texas Crim. Rep., 98, 86 S. W. Rep., 335; Howard v. State, 23 Texas Crim. App., 265; Bonner v. State, 29 Texas Crim. App., 223.

The court having charged the jury upon the issue of provoking a difficulty with intent to kill the deceased, the jury should have been charged the converse of the provocation—that if the defendant went to the place of the homicide for the purpose of provoking a difficulty, but with no intent to kill the deceased, he would not be guilty of any higher degree of homicide than manslaughter. Henry v. State, 9 Texas Crim. App., 358; Miller v. State, 27 Texas Crim. App., 497; Williams v. State, 24 Texas Crim. App., 17; Alexander v. State, 25 Texas Crim. App., 260; Jones v. State, 17 Texas Crim. App., 602; Cartwright v. State, 14 Texas Crim. App., 486; Arto v. State, 19 Texas Crim. App., 126; Thuston v. State, 21 Texas Crim. App., 245; Roach v. State, 21 Texas Crim. App., 249; Jackson v. State, 32 Texas Crim. Rep., 192.

On question of provoking difficulty: Burnett v. State, 51 Texas Crim. Rep., 20, 100 S. W. Rep., 381; Chandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 672; Morgan v. State, 29 S. W. Rep., 1092; Abram v. State, 35 S. W. Rep., 389.

*C. E. Lane,* Assistant Attorney-General, and *John E. Green, Jr.,* and *Richard Maury,* District Attorney, for the State.—On question of the court's charge on provoking the difficulty: McChandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 672; Abram v. State, 36 Texas Crim. Rep., 44; McGrew v. State, 49 S. W. Rep., 226; Bateson v. State, 46 Texas Crim. Rep., 34; Thumm v. State, 24 Texas Crim. App., 667; Tate v. State, 35 Texas Crim. Rep., 231; Tardy v. State, 47 Texas Crim. Rep., 444; Mathewes v. State, 42 Texas Crim. Rep., 31; Prescott v. State, 54 Texas Crim. Rep., 481.

Upon question of admitting declarations of third parties: Felder v. State, 23 Texas Crim. App., 477; Evers v. State, 31 Texas Crim. Rep., 318; Cole v. State, 45 Texas Crim. Rep., 225; Stevison v. State, 48 Texas Crim. Rep., 601.

Upon question of res gestae: Freeman v. State, 40 Texas Crim. Rep., 545; Lindsey v. State, 35 Texas Crim. Rep., 164; Ingram v. State, 43 S. W. Rep., 518; Fulcher v. State, 28 Texas Crim. App., 465; Lewis v. State, 29 Texas Crim. App., 201; Stagner v. State, 9 Texas Crim. App., 440.

On question of admissibility of declaration of coconspirator: Wallace v. State, 46 Texas Crim. Rep., 341; Barber v. State, 69 S. W. Rep., 515; Trevino v. State, 41 S. W. Rep., 609; Dobbs v. State, 51 Texas Crim. Rep., 113; Roma v. State, 55 Texas Crim. Rep., 344; Cox v. State, 8 Texas Crim. App., 254; Smith v. State, 21 Texas Crim. App., 96; Armstead v. State, 22 Texas Crim. App., 51; Slade

v. State, 29 Texas Crim. App., 381; Richards v. State, 53 Texas Crim. Rep., 400; Bowen v. State, 47 Texas Crim. Rep., 137; Williams v. State, 45 Texas Crim. Rep., 240; Chapman v. State, 45 Texas Crim. Rep., 479; Hannon v. State, 5 Texas Crim. App., 549; Taylor v. State, 3 Texas Crim. App., 169; Moore v. State, 15 Texas Crim. App., 1; Eggleston v. State, 59 Texas Crim. Rep., 542, 128 S. W. Rep., 1105.

HARPER, JUDGE.—Appellant was indicted, charged with murder, and when tried was convicted of murder in the second degree and his punishment assessed at twenty years confinement in the penitentiary.

There are a number of bills of exceptions in the record, some of which we can not consider, the court rejecting them, stating as a reason for refusing them: "The bill is disapproved for the reason that the supposed error mentioned therein has never been called to the attention of the court, either at the time of the trial or in the motion for a new trial, or in defendant's amended motion for a new trial, and the question therein has never been raised in any way until this bill was presented for approval on the 22d day of May." This was long after the motion for a new trial had been overruled and long after the adjournment of court for the term. Article 723 of the Code of Criminal Procedure provides that the judgment shall not be reversed unless the error in the charge was excepted to at the time of the trial, or be complained of in the motion for a new trial. No exception to the charge of the court was reserved at the time of the trial and the matter not being complained of in the motion for new trial, we are prohibited by law from considering this matter. This ruling applies to bills Nos. 14, 15 and 19. However, those bills which the court states the questions raised were not presented until presented in the amended motion for a new trial, although not excepted to at the time of the trial, bring the matter properly before us for review. The statute gives appellant the right to assign errors to the charge of the court in the motion for a new trial, and while the questions raised were not contained in the original motion filed, yet the question of filing an amended motion after two days had elapsed, was one of discretion to be exercised by the trial judge, and having granted permission to appellant to file an amended motion, all questions properly presented in this amended motion must be considered by this court. The reason that the statute requires that the supposed errors be excepted to and stated at the time, or in the motion for a new trial, is that the trial judge may have an opportunity to pass on all these questions, and if he is convinced that an error has been committed, he can by granting a new trial avoid the expense and delay of an appeal. If all the matters are called to the attention of the trial judge prior to the time of overruling the mo-

tion for a new trial by proper bills of exception, or by grounds stated in the motion for a new trial, he is given an opportunity to pass on all questions thus raised, and it is made the duty of this court to pass on all questions thus presented, but as hereinbefore stated, those issues which are presented for the first time in this court, and to which no exception was reserved at the time of trial, nor presented in the motion for new trial, the trial court had no opportunity to pass thereon, and the statute prohibits us from considering them on appeal.

Bills Nos. 21 and 22 are marked refused by the court, and should not be contained in the record. If the court refuses same we must presume the matter did not occur or no exception was reserved. The statute provides for bystanders' bills if the court refuses a bill, and if the bill is refused, and no bystander's bill presented, no question is presented we can review.

The court did not err in overruling the application for a continuance. It appears that the witness Reed Tevis appeared and was not used by defendant. Diligence as to the other witnesses is not shown, this being the second application for a continuance. The contest filed to this application sets forth facts which show a total lack of diligence, and we must presume that the court properly exercised his discretion, especially as no process is attached to the application.

It appears from the State's evidence that defendant and one Kerr had a row, and that deceased at that time cursed and used abusive language to defendant, and called him a coward about jumping on as small a man as Kerr. Defendant and Mr. Kuhlman were at the American bar shortly after this and defendant filled his pocket with cartridges; he did not get a gun there, as he says that Fisher had soaked the gun left there by Townsend, it being a sawed-off shotgun. Defendant and Kuhlman went from the American bar to the Gombert bar, when this conversation took place, according to Mr. Kahn. He says: "I was in Gombert's saloon on the night of the killing of Walter O'Brien; I saw the defendant Frank Kinney there; I also saw John Kuhlman there; I had a conversation with John Kuhlman first, and then afterwards both talked to me. . . . Len McFarlane, Alph Baker and myself were just about to take a drink when John Kuhlman came in; he said, 'Kahn, I want to see you a minute;' I said, 'We are taking a drink now, and if you want to see me, come on here and when I am through I will talk to you;' so he came up there, and I said, 'What is it, John?' and he said, 'Have you got a shotgun?' I said, 'No, I have not; what do you want with a shotgun?' He said, 'I have got a friend that wants to kill a damn son-of-a-bitch,' or words to that effect, and I said, 'Well, if I did have one, you couldn't get it for any such purpose as that;' and I said, 'Who is your friend?' and he in a loud tone of voice, said, 'Oh, Frank, come here;' and about that time I saw Frank coming in from the outside through the screen door, and he came on up to

where we were talking, and I said, 'What's the matter, Frank, are you in trouble?' and he said, 'Yes, sir; Walter O'Brien jumped on me and abused me, and I be damned if I am going to stand for it;' and I talked to them a few minutes and finally agreed that Frank Kinney was going to whip Fisher and John Kuhlman was going to whip Otto Meyer, they took a drink there and left, and that is all I know of it." The witness Len McFarlane testified in substance to the same facts.

It appears from the State's testimony that when defendant and Kuhlman left the Gombert saloon, they went to a telephone and called Wm. McBride, who testified that on the night of the homicide defendant called him over the telephone after nine o'clock at night and told him he wanted to borrow his (witness') gun, as he was going hunting; he agreed to loan it to him, when defendant asked him to bring it to Charley Alios' place of business. Witness says he took the gun to the place suggested, and there met defendant and John Kuhlman. He says he asked defendant where he was going to get shells, when defendant said he had a pocket full of them, and showed him some, when defendant and Kuhlman went off together. It is shown they took a street car, and went near the place where deceased was working and got off the car. From this time the record does not disclose where Kuhlman went, but a witness, Mr. Hubbard, says he was going toward the saloon where deceased was at work, when defendant passed him with a gun in his hands, and before he got in the saloon he heard a gun fire. Witness Kerr says he was in the saloon with deceased and one Fisher, who is now dead, and he saw defendant throw the door open with one foot and raise the gun, when witness dropped to his hands. That the gun was first pointing towards him, witness, but defendant turned the gun towards deceased and fired. That deceased hollered, "Hold!" was all he said and fell behind the bar. That Fisher said, "You son-of-a-bitch, what are you doing?" and as the gun fired he and Fisher both ran out of the house. Witness Pete says he was at work upstairs in the building when he heard the shot and went downstairs at once, and went in the saloon. Deceased, who was lying behind the bar, flat on his back, remarked to him, "Pete, for Christ sake, stop the blood; I am bleeding to death," and he got a towel and wrapped his arm, when deceased said, "Defendant Kinney had told him he was going to kill him, but he thought defendant would wait until he got outside and take a punch at him." Witness further testified that deceased had no weapons, and he saw none close to him. The doctor testifies this wound which entered his right side and pierced his lungs was the cause of death.

By proper bills defendant objected to the witnesses Kahn and Mc-Farlane testifying to what Kuhlman said; objected to the witness Kerr being permitted to state what Fisher said at the time of the shooting and objected to witness Pete being permitted to state what

deceased said to him when he entered the saloon. The statements of Fisher and Pete were admissible as res gestae. They are virtually part and parcel of the transaction. The remark of Fisher was made as the shot was fired, as was the remark of deceased, and is a part of the event, was addressed to the defendant. He must have heard it and made no reply. Witness Pete shows he was the first person to deceased, and only a few minutes had transpired from the shooting until the statement was made. (For authorities see section 1236, White's Penal Code, section 1085, White's Code of Criminal Procedure, and section 339, Branch's Criminal Law.)

In regard to the conversation testified to by Kahn and McFarlane, defendant denies hearing it, but the facts and circumstances introduced by the State, that he had gone to the American bar in search of a gun, and filled his pocket with cartridges; that Kuhlman and defendant started to Gombert's saloon together, Kuhlman saying he could get a gun from Kahn; that when Kahn asked him who it was wanted the gun, Kuhlman said, "Oh, Frank, come here, when defendant came in the door and told witness that deceased had jumped on him and abused him and he be damned if he was going to stand it." That when they left there they got a gun from McBride, and defendant went straight to the place of deceased and shot him. These facts would indicate that defendant knew Kuhlman was going to ask Kahn for the gun, and was close enough to hear what Kuhlman said, because he took up the conversation, and said deceased had cursed and abused him and he was not going to stand it. In regard to this testimony, the court instructed the jury:

"If you believe from the evidence, beyond a reasonable doubt, that the defendant and John Kuhlman, agreed between themselves, or conspired together to kill Walter O'Brien, and that in pursuance thereof defendant killed him, then I charge you that any act or declaration of John Kuhlman in furtherance of said common purpose done or said by him in the absence of the defendant, and which may have been introduced in evidence in this case is legal evidence in this case against defendant, and may be considered by you in finding your verdict, but if the evidence fails to satisfy you, beyond a reasonable doubt, that such agreement or conspiracy existed, then such acts or declarations of John Kuhlman, done or said in the absence of the defendant is not legal evidence in this case against the defendant and you will give them no consideration whatever, but will wholly disregard them in finding your verdict in this case."

The evidence would authorize this charge. Deceased said defendant and Kuhlman were together when he had the words with defendant about the witness Kerr; they were together at the American bar when defendant filled his pocket with cartridges; they left there together and went to Gombert's saloon, where Kuhlman said he wanted a gun for a friend who wanted to kill a son-of-a-bitch, and was in such close proximity that when Kuhlman called him to appear,

and by his conversation indicated he was the friend for whom Kuhlman wanted the gun; they leave there together and go to Alios' and get the gun from McBride; they return together to a point near where deceased is shot, when defendant steps in the saloon and kills O'Brien. Under this charge the jury was instructed to ignore the remarks of Kuhlman (even though the jury might have believed under the evidence he heard them) unless they believed they were acting together. This was as favorable as could have been desired.

Neither was there error in permitting the witness Kerr to detail the entire conversation had with deceased just before the homicide, on redirect examination. The defendant on cross-examination had developed that a conversation was had, and elicited such portions as he desired; the State was then entitled to let the jury hear all that was said that involved this defendant that they might intelligently pass on the matter.

It appears that on the evening of the killing Fisher had borrowed a pistol from J. W. Oliver, and defendant offered to prove by Oliver that Fisher had told him the day subsequent to the killing that he (Fisher) had delivered the pistol to deceased just a short time before the homicide. He also desired to prove by the witness other statements of Fisher, and that he, witness, in obedience to the statement of Fisher had gone to look for the pistol. The witness testified he had never seen the pistol since he loaned it to Fisher, and did not know what had become of it. The statements of Fisher would be hearsay pure and simple, and the court did not err in excluding this testimony.

Defendant in a bill states he desired to testify that he had told a number of people, naming them, that he was going hunting prior to any trouble either with Kerr or deceased on that day. The court, in approving the bill, says:

"This bill is approved with the explanation that the question asked by defendant was: Go ahead and tell the jury what you said about going hunting and who you talked to, giving their names and the different parties around town that you talked to about going hunting that day. The court sustained the objection to this question, but the court did not exclude any testimony showing preparation to go hunting."

What he might have said to the different parties would not have been admissible, and as qualified by the court the bill presents no error.

There was no error in the court failing to submit a charge on manslaughter. As hereinbefore stated, it was shown on behalf of the State that defendant became angry at the remarks of deceased, and went to one saloon in search of a gun, and filled his pocket with cartridges; he then went to another saloon where Kuhlman tried to borrow a gun for a friend to kill a man, and defendant said it was deceased he was angry with; failing to get a gun at this place, Kuhl-

man and defendant got a gun from McBride, when defendant returns to the saloon and kills deceased. This would raise no issue but murder. Defendant testified he was going hunting and Fisher was going with him. That he was hunting Fisher and seeing him in the saloon he went in and asked Fisher if he was ready to go, and when he asked that question deceased made an insulting remark, and as he thought, reached for a pistol, when he shot him—that he shot deceased to save his own life. This presented self-defense. There is nothing in the record showing sudden rage, resentment or terror, accompanied by adequate cause to reduce the offense to manslaughter.

The paragraph complaining of the charge on express malice and other parts of the charge, presenting murder in the first degree, presents no error. The jury found the defendant guilty of murder in the second degree only, and it is the rule of this court that error in the charge on murder in the first degree, if error there be, would be immaterial error. Neither was there error in the court instructing the jury that if they believed beyond a reasonable doubt that defendant was guilty of murder, yet if they had a reasonable doubt whether it was upon express or implied malice, they would give the defendant the benefit of such doubt, and find him guilty of no higher grade of offense than murder in the second degree.

The criticism of one sentence of the court's charge upon self-defense is not a fair criticism of the charge. This sentence complained of appears wherein the court is defining self-defense at the close of the charge on murder in the first degree, and does not appear in the charge on self-defense proper, and when the court applied the law of self-defense to this case, the sentence complained of does not appear, but such charge is a full and fair presentation of the issue as made by the evidence.

The defendant excepted to the failure of the court to give a special instruction instructing the jury to ignore certain remarks alleged to have been made by the district attorney. This charge relates to matters in the bill which the court refused, and as the court refused the bill of exceptions, the presumption must be indulged that the district attorney did not use the remarks or the court would have approved the bill. If the language was used, and the court refused the bill, the defendant should have proven up his bill as provided by the statute.

The appellant complains that the court in his charge submitted the issue of provoking the difficulty, and it is very questionable if this issue is raised by the evidence. If there is no evidence raising this issue, it is hardly conceivable that this charge could have resulted in injury to defendant.

The court very fairly submitted the issue of self-defense and as fully as defendant's evidence called for, and if the evidence raises the issue of provoking the difficulty, this issue was properly presented by the charge. State's counsel earnestly insists that defendant by

his conduct, in going to defendant's place of business, when he had testified that deceased had cursed him, and he had told Kahn he would be damned if he was going to stand it, and then going and getting a gun, in the light of deceased's statement, that appellant had told him (deceased) that he was going to kill, fairly raises this issue. In the case of Goodwin v. The State, 39 Texas Crim. Rep., 408, this court held that although the court committed error in giving a charge on provoking the difficulty, the evidence not raising that issue, yet under the evidence in that case it was not such error as would be ground for reversal of the case. And in this case we have grave doubt that the issue of provoking the difficulty is in the case, but we are firmly of the opinion that even though it should be held that no such issue is in the case that under the evidence in this case such charge as given by the court was not calculated to and did not impair the rights of defendant, and under the provisions of our Code of Criminal Procedure it would not be ground for reversal of the case.

Judgment affirmed.

*Affirmed.*

ON REHEARING.

February 28, 1912.

HARPER, JUDGE.—This case was affirmed on a former day of this term, and appellant has filed a motion for rehearing presenting but two grounds, ably arguing them both. In the second ground he presents a question not raised by the motion for new trial filed in the lower court and to which no assignment was made in any bill of exceptions. In fact, it was not presented in the brief of counsel filed in this court on the original hearing, but is urged for the first time in his motion for rehearing filed herein. This is too late to point out errors in the charge of the court, unless it presents fundamental error. That a certain portion of a paragraph of a charge of the court might properly be construed to be upon the weight to be given the testimony, if it were considered at all by the jury, does not present fundamental error, and for us to review a charge in this respect it must have been excepted to at the time of the trial on that ground, or the error must have been called attention to in the motion for new trial. Article 723 of the Code of Criminal Procedure provides that this court shall not reverse a case on account of an error in the charge unless it is pointed out by an exception at the time of the trial, or in the motion for a new trial. Appellant having done neither, we can not review the matter set up in the second ground of the motion for rehearing, and will not pass thereon.

In the first ground of the motion for rehearing appellant earnestly insists that the evidence did not authorize a charge on provoking the difficulty, and the court erred in so charging, in the following paragraph: "I further charge you that if you believe from the evidence,

beyond a reasonable doubt, that the defendant sought the meeting with deceased for the purpose of slaying deceased, and having found him, did some act, or used some language, or did both, with intent to produce the occasion and bring on the difficulty, and that the same, under the circumstances, was or were reasonably calculated to provoke a difficulty, and on such account the deceased attacked him, and he then killed deceased in pursuance of his original design, then the defendant can not justify on the ground of self-defense, but such killing would be murder of one of the degrees; but if defendant had no such purpose in seeking the fatal meeting, or having it, did no act reasonably calculated to provoke the difficulty, was attacked by the deceased, then his right of self-defense would not be forfeited, and he could stand his ground and defend himself by the use of such means of defense as the facts and circumstances indicated to be necessary to protect himself from danger or what reasonably appeared to him at the time to be danger." Appellant admits that the court gave a full, fair and complete charge on self-defense, and to which he assigned no error, but he says that the evidence did not raise the issue of provoking the difficulty as presented in the above charge, and that in giving this charge it was an unwarranted limitation on his right of self-defense, appellant, in his brief, saying: "In the opinion in this case the court uses this language, 'The court, very fairly, submitted the issue of self-defense;' from this we understand that the court is of the opinion that self-defense was raised; there is no intimation in the opinion that such issue was not fully presented by the evidence. We further notice, after discussing the Goodwin case, the court uses the following language, 'And in this case, we have grave doubt that the issue of provoking the difficulty is in the case, but we are firmly of the opinion that even though it should be held that no such issue is in the case, that under the evidence, in this case, such charges as given by the court was not calculated to and did not impair the rights of defendant, and under the provisions of our Code of Criminal Procedure, it would not be ground for reversal of the case.' Will it be written down as an opinion of this honorable court whose judgment is final, whose opinions fix the rule for our guidance in the trial of criminal cases, that where the issue of self-defense is presented, and that of provoking a difficulty is not, that the submission of such issue is harmless?" No counsel in this case, nor in any other case, can take it as the opinion of this court that where the issue of self-defense is presented, and that of provoking the difficulty is not, that the submission of such issue is harmless. We decide every case upon *the evidence of that case,* and in some cases, as in this one, it will be held to be harmless, while in other cases it would be material and reversible error. The cases presented by appellant present that view and present it admirably, and if counsel would read the evidence in those cases he would see wherein they vary materially from the case he is here presenting, and why the decisions

he quotes are not applicable to this case, nor authority for holding that such a charge in this case would present reversible error. This court has always held that the law must be submitted as applicable to the facts in the case on trial, and has held that where it was contended that a defendant, under the evidence, has forfeited or abridged his right of self-defense, that consideration must be addressed to the nature and quality of the wrongful acts by which it is claimed the right of self-defense is abridged, and the adjudicated cases in this State hold among the slayer's acts which abridge his right of self-defense are the following: First, devices by language, or otherwise to provoke the deceased to make an assault which will furnish a pretext. Second, provocation of the deceased into a quarrel, causing the fatal affray when the intent is discernible from all the evidence. Third, preconcert with deceased to fight him with deadly weapons, or mutual combat. Fourth, commencing an attack, assault, or battery upon the deceased, and fifth, going with a deadly weapon where the deceased is, after an altercation, and by some act then done, showing an intention to engage in a deadly combat, even though the deceased may be guilty of such overt act. See Cartwright v. State, 14 Texas Crim. App., 486; Cunningham v. State, 17 Texas Crim. App., 89; Jones v. State, 17 Texas Crim. App., 602; Allen v. State, 24 Texas Crim. App., 216; Ball v. State, 29 Texas Crim. App., 107; Milrainey v. State, 33 Texas Crim. Rep., 577; Thumm v. State, 24 Texas Crim. App., 667; Meuly v. State, 26 Texas Crim. App., 274; Bonnard v. State, 25 Texas Crim. App., 173; Johnson v. State, 26 Texas Crim. App., 631; Levy v. State, 28 Texas Crim. App., 203; Carter v. State, 30 Texas Crim. Rep., 551; Polk v. State, 30 Texas Crim. Rep., 567; Sullivan v. State, 31 Texas Crim. Rep., 486; Jackson v. State, 32 Texas Crim. Rep., 192; Powell v. State, 32 Texas Crim. Rep., 230; Mathis v. State, 34 Texas Crim. Rep., 39; Burris v. State, 34 Texas Crim. Rep., 387; Plew v. State, 35 S. W. Rep., 366. Other cases might be cited laying down these rules. The defendant himself testified that he and Fisher and Myers went into the saloon where deceased was at work, and that deceased had cursed him as being a G—d d—nd dirty, cowardly s—n of a b—h about the way defendant had treated Duke Kerr, and that deceased had told him, "I am going to get you—I am fixed all the time." That he left this saloon and went to the American bar where he filled his pockets with cartridges; that he learned the gun Mr. Townsend had left at the American bar, a "sawed-off shotgun," had been soaked by Fisher, when Kuhlman said, "I think I can get a gun from Mr. Kahn," when he went to Gombert's saloon, where the conversation took place copied in the original opinion, wherein the remark was made that they wanted the gun to kill "a d—d s—n of a b—h," etc., the full text being copied in the original opinion. When they failed to get a gun from Kahn, William McBride was 'phoned, and his gun was secured, when appellant went direct to the place where deceased was employed and the

killing took place, being an assassination according to the State's testimony; the defendant in his testimony presenting a theory which called for a charge on self-defense. Under this state of the record, wherein it is shown that defendant became angry at the remarks of deceased, goes off and fills his pockets with shotgun shells, secures a shotgun and returns to the place of the difficulty, after the remark has been made that the gun is wanted to kill a s—n of a b—h, the deceased being shown to be the man who is talked about. Such a charge as herein given would not present reversible error, where a full and complete charge on self-defense is given.

Motion for rehearing is overruled.

*Overruled.*