### John Burkhalter v. The State.

#### No. 5237.   Decided May 14, 1919.

**1.—Murder—Circumstantial Evidence—Confessions—Charge of Court.**

Where, upon trial of murder, one of the State's witnesses testified to defendant's confession to her, although the same was made under peculiar circumstances, there was no error in the court's failure to charge on circumstantial evidence.

**2.—Same—Evidence—Declarations of Defendant—Hearsay.**

Where, upon trial of murder, the court permitted a State's witness to testify that another witness, who was an attendant upon court, had told him that the defendant had told said witness that he killed deceased, the same was hearsay and reversible error. Following Murphy v. State, 65 Texas Crim. Rep., 551, and other cases.

**3.—Same—Evidence—General Reputation—Too Remote.**

Where, upon trial of murder, defendant put his reputation in evidence as a law-abiding citizen, covering something like fifteen years prior to the time of the homicide, the State should not have been permitted to introduce testimony showing that fifteen or twenty years or more before this homicide the defendant was given to fighting and was a holy terror; this was too remote. Following Bogus v. State, 55 Texas Crim. Rep., 127, and other cases.

**4.—Same—Evidence—Tracks—Rule Stated—Opinion of Witness.**

Before a witness can give his opinion as to the similarity of tracks found upon the ground, and made by the shoes, the witness must have made some measurement of the tracks found upon the ground and the foot or shoe of the accused, or made some comparison, etc.

**5.—Same—Case Stated—Tracks—Measurement—Comparison.**

Where, upon trial of murder, the evidence showed that between the time of the killing and the time that other witnesses came to look for tracks, there had been a rain at that immediate point, and some days after another State's witness made an examination and testified that he found tracks of peculiar indentations on the ground, and that they corresponded in his judgment with the pair of boots shown him by the defendant, no measurements or comparison having been made, etc., the same was inadmissible in evidence. Following Hester v. State, 51 S. W. Rep., 932, and other cases.

**6.—Alibi—Charge of Court.**

The court's charge on alibi should have been more complete and conformed to the opinion of this court on former appeal.

**7.—Same—Evidence—Character of Witness.**

Upon trial of murder, there was no error in excluding testimony as to the character of house the witness was keeping, and that a woman was living in the house and had giving birth to three illigitimate children, in seeking to impugn the character of the said witness.

**8.—Same—Remarks by Court—Practice in District Court.**

Upon trial of murder the court's observation, in sustaining the objection of defendant to certain testimony, to the effect that it was not admissible if the woman had seven hundred children, was improper, but he should have simply sustained or overruled the objection.

Appeal from the District Court of Cherokee.    Tried below before the Hon. L. D. Quinn.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Woods, Barnkey & King, A. A. Seele, C. C . Watson* and *B. B. Watson.*—Os question of remarks by court: Kirk v. State, 35 Texas Crim. Rep., 224; Placker v. State, 58 id., 216; Walling v. State. 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624.

On question of character witness: Bowers v. State, 45 Texas Crim. Rep., 185; Bogus v. State, 55 id., 127; Hanks v. State, 55 id., 451; Brown v. State, 56 id., 389.

. On question of tracks; Ballinger v. State, 63 Texas Crim. Rep., 657, and cases stated in opinion.

On question of alibi: Birkhalter v. State, 79 Texas Crim. Rep., 336, 184 S. W. Rep., 221.

*E. A. Berry,* Assistant Attorney General, for the State ·

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at five years confinement in the penitentiary.

This is the second apeal, the first being found reported in 79 Texas Crim. Rep., 336.    In a general way, the facts and circumstances developed by this record are as in the former appeal.    There is, however, in this record some rather important amended testimony not shown by the former record.    Illustrative of this, Mrs. Jones testified on this trial that appellant made a confession or admission to her that he killed deceased.    The statement was made under rather peculiar circumstances.    It is not intended here to    discuss her testimony and the circumstances attending her statement of the con-

fession. On the former trial she testified, as shown by this record, that appellant, in talking to her about the matter, had no reference to the deceased, and that they were not talking about deceased at the time he made the statement. There was a witness named Russell who testified to an indirect confession of defendant, which he said occurred in the fall after the killing of deceased in the early spring or late winter prior to a conversation between him and defendant. This statement comes under rather peculiar circumstances. These matters are mentioned in order to meet appellant's contention that the court was in error in refusing and failing to charge the law applicable to circumstantial evidence. The testimony of Mrs. Jones in reference to the confession is positive and direct; that of Russell is not. Without the testimony of Mrs. Jones we are of opinion the case would be one of circumstantial evidence, but that matter is not further discussed.

A bill of exceptions recites that after Russel testified for the State on cross-examination, he was asked, referring to his testimony in regard to appellant's conversation, if he did not state to Jim Manning that the defendant had made a statement to him, the witness, admitting the killing. This the witness Russel denied. It is then shown that the State proved by Russell that Manning told him, Russell, that defendant admitted to him, Manning, that he, defendant, had killed deceased. Manning was in attendance upon this trial, but was not used as a witness. Objection was urged to this testimony, which we think was well taken. If Manning made the statement to Russell that defendant admitted to him that he had killed deceased, it was hearsay and on a most material issue in the case. If defendant in fact made the admission to Jim Manning, Manning could have sworn to it, and it would have connected the defendant directly with the homicide, but this could not be proved by a statement of Manning made to Russell. This was clearly hearsay testimony and inadmissible. It is also shown that Manning was present and could have been called as a witness but was not. See Murphy v. State, 65 Texas Crim. Rep., 55; Kinney v. State, 65 Texas Crim. Rep., 251; Herara v. State, 75 Texas Crim. Rep., 720.

Another bill recites that appellant put his reputation in evidence as a law-abiding citizen, covering something like fifteen years prior to the time of the homicide. The State was permitted then to introduce testimony showing that fifteen or twenty years or more before this homicide, appellant was given to fighting, and also to prove by one or more witnesses that he was then regarded "as a holy-terror." The objection to this testimony should have been sustained. This was too long. The interregnum between his fighting capacity as a youngster and the time of this killing, something like fifteen or twenty years, is too remote. See Bogus v. State, 55 Texas Crim. Rep., 127; Hanks v. State, 55 Texas Crim. Rep., 451;

Brown v. State, 56 Texas Crim. Rep., 389; Wesley v. State, 85 S. W. Rep., 802; Bowers v. State, 45 Texas Crim. Rep., 185.

Another bill raises objection to the introduction of testimony of the witness Adams in regard to tracks. The record shows in this connection that the homicide occurred in the morning, about 9 or 10 o'clock. Quite a crowd of neighbors gathered in and around the body. The justice of the peace from Nacogdoches, and the sheriff, deputy sheriff and the constable from the town of Garrison were also among those present. There was a good deal of walking around about the scene of the homicide and investigation for tracks and evidences that might lead to the discovery of the party who shot the deceased. It was in a very densely wooded country and a great many leaves upon the ground which rendered it impossible, it seems from the testimony, to find tracks. None were discovered. About seven days afterward some of the officers were upon the ground looking for evidence. Among those present on the latter visit was the county attorney, who was not present on the day of the killing. He testified, among other things, that he found some tracks near the scene of the killing which he described as being made by a shoe about No. 8 or 9 in size, which showed peculiar indentations evidencing that the shoe had some protruding tracks which left an impression in the tracks so found. He testified further that the defendant was with them, and that they went to dinner at defendant's house, which was several hundred yards away, and while there they engaged defendant in conversation as to the character of shoes and boots that he owned. Witness asked the defendant the privilege of seeing his boots or shoes. Defendant told them there was a pair of boots in the room, which they examined, and witness says that these boots had tacks that would make a similar impression to those he saw on the ground near the scene of the hoimcide, and that he thought these boots were about No. 8 or 9 in size, and that his judgment and conclusion was that these boots made the tracks on the ground. It is further in evidence that the defendant made statements that he was about two hundred and fifty yards away from the scene of the shooting at the time it occurred; that he did not see either the man who fired the shots, or the deceased, and did not know what it meant; he supposed it was some people squirrel hunting, as a good deal of hunting was done in that immediate "bottom;" that he was hunting a cow or his cattle and paid no further attention to it. He took the witness stand and denied that he shot the deceased, and stated that he had no gun with him with which to shoot. He is borne out by the testimony of several witnesses, some of them State's witnesses, to the effect that he did not have a gun on this occasion. Appellant objected to the introduction of the testimony of the witness Adams as to tracks for want of definiteness, and also there was no comparison made, and the boots were

not placed in the tracks found upon the ground. and that witness was stating his conclusion. The question of the introduction of tracks has been the subject of a great many decisions, and it would seem that the admissibility of testimony is largely one of application to the particular case and the particular facts and environments as developed on the trial. Quoting from Mr. Branch's Ann. P. C., p. 81, it is stated that: "Before a witness can give his opinion as to the similarity of tracks found upon the ground and tracks made by the accused, the witness must have made some measurement of the tracks found upon the ground and the foot or shoe of the accused, or make some comparison between tracks found upon the ground and shoes known to be those of the accused such as placing the shoe in tracks on the ground; or if there are pecularities in the tracks made upon the ground, such as worn places or peculiar tracks, and such places or tracks were found upon or were made by the shoe known to belong to the accused, the witness may detail such facts and may then give his opinion as to the similarity between such tracks." In support of this Mr. Branch cites a great many cases. He again states this rule: "Where the witness did not measure the tracks nor measure the track or shoe of the accused, it is error to permit him to give his opinion as to the similarity of such tracks based on observing the tracks and afterwards observing the track and foot of the accused." A great number of cases he cites in support of that rule. It is also held in Hester v. State, 51 S. W. Rep., 932, that it was error to permit a witness to testify that the track on the ground and the track of defendant's horse was one and the same track; he should have stated the size, similarity, etc. See also Grant v. State, 42 Texas Crim. Rep. 276. Smith v. State, 45 Texas Crim. Rep., 410, is authority for this statement: "Where the witness did not take any measurements on the ground and stated that the tracks were of a number 8 or 9 shoe, broad across the ball, with the heel worn off one side, and that the shoes of the accused appeared to be of that size and were broad across the ball with the heel worn off on one side, his testimony is not certain enough to authorize him to give an opinion upon so vital a question as the similarity of tracks." See, also, Tankersley v. State, 51 Texas Crim. Rep., 173, and Ballinger v. State, 63 Texas Crim. Rep., 657. We are of opinion that under the peculiarities of the testimony of Adams the court should not have admitted his opinion that the boots he saw at defendant's house made the tracks he saw in the woods. The defendant testified, and many declarations of his were put in evidence to the effect that he was two hundred and fifty yards away, or about that distance, at the time of the shooting. If he made these tracks either going to or coming from that place, or at that place, and these tracks were seen by the witness Adams, it would not be sufficiently definite to show his proximity to deceased.

The wounds on the body show that the party who did the killing was very close to him. It is also in evidence that between the time of the killing and the time of these other witnesses' examination for tracks and failure to find same, there had been a rain at that immediate point. Under all these circumstances we are of opinion, as this bill and the record shows the matter, the testimony of the witness Adams should not have gone to the jury and unless there is something more definite in his testimony showing the proximity of the tracks to the body, this testimony should not be admitted. The other witnesses who were with him did not testify as to the tracks. They or some of them testified that they failed to discover any tracks on their first visit to the scene of the homicide, though they searched.

There is an attack made upon the court's charge on alibi and a requested instruction refused. The question came on the former trial, and it seems from the opinion on the former appeal and this record that the charge as given by the court is the same. Judge Harper, in the former opinion, suggested to the court he should give a more ample and complete charge on the question of alibi. We suggest again to the court that this be done.

There is another bill of exceptions which recites that appellant was seeking to introduce testimony which reflected upon the witness Russell, and the character of house he was keeping, and his sister-in-law, who was living in his house and had given birth to three illegitimate children. By this he was seeking to impugn the character of the witness Russell. We are of opinion this testimony was not admissible. The court observed in sustaining the objection that it was not admissible if the woman had seven hundred (meaning seven hundred illegitimate children). This will not occur upon another trial, but is mentioned so as to guard the trial court against making remarks of that character in the admission or rejection of testimony. The statute is rather explicit that the court should not indicate his view of the testimony, but simply sustain or overrule the objection when presented. This is in aid of another statute which provides the jury shall be the exclusive judges of the facts, the weight of the testimony, and the credibility of the witness, and was enacted also to prevent the court from conveying his idea of the testimony and the weight to be attached to it so as to impress the jury. We would again suggest to trial courts that it is always safest to follow statutes prescribing rules with reference to the trial of criminal cases. It avoids trouble and complications and the necessity of discussing such questions on appeal. It occurs to us it is about as easy to follow the statute as it is to violate it, and following it is the safest rule, and its violation is always upon dangerous lines.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*