JACK MILLSAPS AND JAMES MILLSAPS V. THE STATE.

No. 13949.   Delivered February 11, 1931.
Rehearing Denied May 20, 1931.

The opinion states the case.

*David E. O'Fiel,* of Beaumont, and *R. C. Roland,* of Eastland, for appellants.

*Hollis M. Kinard,* Co. Atty., of Orange, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Appellants, Jack Millsaps and James Millsaps, were jointly indicted, charged with the offense of the murder of Howard Booth, and a penalty assessed of twenty-five years in the penitentiary.

Deceased was injured on the 28th day of November, 1929, and died on the 24th day of December, 1929. He was first seen after the injury was inflicted by A. M. Kirk on the 28th day of November, at about five o'clock in the morning, before daylight. He awakened Kirk by pushing against the front door of his house, the Kirk house being on the main highway in Orange county between the cities of Beaumont and Orange. He was taken to a hospital in Beaumont. At the hospital the deceased was visited by J. D. McClain and J. E. Watson, who were detectives on the police force of the City of Beaumont, and one George L. Gibson, deputy sheriff of Orange county. Later on in the day and before noon, the appellants were apprehended and taken to the hospital and into the ward in which deceased was a patient. In the presence of the appellants and said officers, the deceased identified appellants as being the persons who had inflicted two stab wounds in his chest and various lacerations on his head and face. Later on during the same day the deceased made a written dying declaration to the county attorney of Orange county accusing appellants of inflicting the injuries mentioned. The deceased remained in the hospital in Beaumont until the 7th day of December, when he was transferred to the Hermann Hospital in Houston, where he died on the 24th day of December.

Dr. J. G. Elynn testified that he examined the deceased on December 8, 1929, and at that time found that deceased had two stab wounds on the left chest, which were at that time complicated with the lung, and that the deceased had multiple abrasions and contusions about the scalp and face; that at the time he was in a state of extreme shock from loss of blood and infection, the stab wound of the left lung causing a complete collapse, leaving only one lung for breathing, and with each breath this punctured wound in the chest would drain blood and pus, and would sputter air. That the deceased developed a state of delirium from the infection, with occasional intervals of semiconsciousness, each day losing vitality until his death occurred. The said physician testified that

upon his experience as a physician and surgeon that the condition and injuries of deceased without doubt produced his death.

Deceased's dying declaration was as follows: "I, Howard Booth, on this 28th day of November, 1929, realizing that I am dying and that there is no hope of recovery, do hereby make the following written declaration:

"Last night I got into a car with two men at Shane's Garage and they told me they were going to take me to the hotel; but instead they drove across the Neches River bridge and across the railroad track. After we got across the railroad track one of the men struck me and this one and I then had a scuffle. As we were fighting the other one hit me over the head and they stabbed me with a knife. They took $75 in money out of my pockets. Officer Johnnie McClain brought these two men up here to the hospital this morning. They were the same two men who attacked me and took my money. They were in a Chevrolet car. They said they were brothers. As they started off one kicked me in the side. They had turned in the Chevrolet and had gotten a Hudson."

The appellants pleaded not guilty and offered as their principal defense an alibi.

Appellants by bill of exception No. 1 complain of the action of the trial court in refusing to allow them to file an amended motion for new trial. The appellants were convicted on June 13, 1930, and thereafter appellants filed their motion for new trial. When said motion for new trial was filed the court notified counsel for appellant that all motions would be disposed of on June 26th at nine o'clock A. M. At said time, counsel for appellant had not yet filed their amended motion sought to be considered. We have examined appellant's said motion for new trial, embracing some thirteen pages, and are unable to determine that any benefit would have accrued to the appellants by filing the amended motion or that any injury resulted from its denial. The privilege of filing an amended motion for new trial is not absolute but the discretion rests with the trial judge to refuse it, and in the absence of an abuse of this discretion, the action will not be reviewed. Carusales v. State, 47 Texas Crim. Rep., 1; Kinney v. State, 65 Texas Crim. Rep., 251, 144 S. W., 257; Tores v. State, 74 Texas Crim. Rep., 37, 166 S. W., 523.

Appellants' bills of exception Nos. 2, 3 and 4 complain of the following remarks made by state's counsel in his closing argument to the jury:

"The defendants (meaning Jack and James Millsaps) were out there on this road driving a screw driver into the body of Howard Booth."

"This undershirt (meaning a torn piece of underwear which the testimony showed was in an automobile found in the possession of Jack Millsaps or in the rear of his residence, and which was recovered by the officers on a search of said car at the time the said Jack Millsaps was

arrested, but it had not been identified as the clothing of the deceased, or his property) was torn off of the deceased."

"No, they (meaning the defendants, Jack and James Millsaps,) were not at Mrs. Crowley's, because they were out there murdering Howard Booth."

To all of said remarks, the judge in his qualification states that the remarks of the county attorney in his closing argument to the jury were in response to and were provoked by statements of the appellants' counsel preceding said county attorney. Also in his qualification to bill No. 2, he states that the piece of undershirt referred to was introduced in evidence. Under the trial judge's qualification showing that said remarks were in response to and provoked by the statements of appellants' counsel preceding them, no reversible error is presented. Kemper v. State, 63 Texas Crim. Rep., 1, 138 S. W., 1025; Scott v. State, 101 Texas Crim. Rep., 598, 276 S. W., 283; Hardin v. State, 104 Texas Crim. Rep., 178, 283 S. W., 517.

By bill of exception No. 5 appellants except to the refusal of the court to give a requested charge that appellant James Millsaps' application for suspended sentence should not be taken as any evidence of guilt on his part. There is nothing in this bill or in the record showing that there was any contention by the state that the filing of such application was evidence of guilt and in the absence of such an issue, it was not necessary for the court to give such a charge. Hughes v. State, 78 Texas Crim. Rep., 154, 180 S. W., 259; Hendley v. State, 94 Texas Crim. Rep., 40, 250 S. W., 174; Campbell v. State, 84 Texas Crim. Rep., 89, 206 S. W., 348.

By bill of exception No. 6, after the trial court had entertained a motion to strike from the record appellants' amended motion for new trial, appellants complain of the refusal of the court to hear the oral testimony of one George A. Giddens, claiming that said evidence would establish the fact that said Jack and James Millsaps were on Milam street in the city of Beaumont continuously on the morning of Thanksgiving day, 1929, and during the time it is alleged that the offense for which they were being tried was perpetrated at some other place and that said evidence would have corroborated the testimony of the appellants and of the witness Lita Crowley. The purported newly discovered evidence mentioned in said bill of exception is not contained in appellants' amended motion for new trial and there is no affidavit attached to said motion to show the truth of this allegation, nor is there any showing why said affidavit could not be obtained, nor is there any showing why the evidence could not have been procured before, and the trial judge in his qualification to said bill states that the said George A. Giddens lived within a short distance of the Crowley place. The bill presents no reversible error.

By bill of exception No. 7 appellants complain of certain remarks of the trial court in the presence of the jury, while the witness H. M. Kinard was testifying on cross-examination by the appellant regarding the dying declaration by the deceased Howard Booth. The court qualified said bill as to what occurred as follows: "The witness, Hollis M. Kinard, had testified to having taken the declaration referred to herein. Defendants' counsel had cross-examined him at length concerning the details of taking such declaration. Said counsel for defendants had asked the identical questions referred to several times and said questions were repetitions of former questions. The witness had testified several times that he had written down in the statement the exact words of the deceased as nearly as he could and when defendants' counsel insisted upon asking the witness over and over concerning that part of the statement the court did remark that the witness had already answered that question."

As qualified, the bill shows no error.

Appellants' bill of exception No. 8 contains appellants' exceptions to the court's charge and is some seven pages long. The court in his main charge to the jury defined murder, malice aforethought, adequate cause, deadly weapon, principals, and aggravated assault. The court also charged on alibi and the affirmative defenses set out by appellant. On the whole the charge was a fair and impartial one and if any error was committed, it is not shown, the appellant not having filed any brief or authorities.

Bill of exception No. 9 is virtually an objection to the introduction of deceased's dying declaration and sets out the testimony in question and answer form of the witness Hollis M. Kenard, county attorney of Orange county, Texas, who testified regarding the taking of said dying declaration and under whose testimony said declaration was admitted. The bill contains five or six pages of question and answer testimony and is qualified by the court as follows: "The witness, Hollis M. Kinard, testified that he took the dying declaration of the deceased, Howard Booth, that at the time of making such declaration the said Howard Booth was conscious of approaching death and believed there was no hope of recovering; that such dying declaration was voluntarily made and was not made through persuasion of any person; that such dying declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement; and that the said Howard Booth was of sane mind at the time of making the declaration. The said witness was cross-examined at length by counsel for the defendants and no part of his testimony showed any departure from the above."

The bill as thus qualified shows that the dying declaration of the said Howard Booth was admissible and no error was shown in the admission thereof.

Finding no error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—In their motion for rehearing the appellants reiterate the various complaints of the procedure in the trial court that were brought forward in the original hearing of this appeal.

In the opinion heretofore rendered by this court each of the bills of exception is treated in detail. In the light of the motion for rehearing, the record has been re-examined. The opinion is entertained that the conclusion reached upon the original hearing is correct. A further discussion would be but a repetition of that which has been written by this court.

The motion is overruled.

*Overruled.*