## Henry McGee v. The State.

### No. 7930. Decided June 11.

1. **Murder—Third Application for Continuance.**—On a trial for murder, where it appeared that in defendant's third application for a continuance, most of the witnesses were the same as were mentioned in the previous applications for continuance, and the State contested the application, and from the evidence heard on the contest it appeared that most of the proposed witnesses had neither local habitation nor existence, and that the rest were not present at the time and scene of the murder, *held,* that the court did not err in overruling the application.

2. **Same—Hearing Contest on Continuance in Presence of the Venire.**—On the hearing of the State's contest on defendant's application for continuance, defendant can not complain that the evidence adduced on the contest was heard in open court, and in the presence of some of the special veniremen who were to try the cause. It could have been heard nowhere else, and the veniremen were present in obedience to a summons of the court.

3. **Evidence—Acts and Declarations of Defendant—Res Gestæ.** What was said and done by defendant a short time after the killing, was admissible against him not only as res gestæ, but was admissible for the reason that they were the acts and declarations of defendant, in the nature of a confession.

4. **Same.**—There is no limit of time in which the res gestæ are arbitrarily confined. They need not be coincident as to time if they are joined by the existing feeling which exists without break or let-down, from the moment or event they elicit.

5. **Reproduction of Testimony of Deceased Witness, Sufficiency of Predicate for.**—Where on a trial for murder the State sought to reproduce the testimony of a deceased witness given at a former trial, *held,* that the predicate for its introduction was sufficiently laid by proof by the sheriff of the county that he had seen the said witness, who had testified on a former trial of this cause, in the county hospital sick; and by the county physician that he was in charge of the hospital, and that the party named and described as said witness was, had died in said hospital since the former trial of this case.

6. **Manslaughter.**—See the opinion for a state of facts held amply sufficient tó sustain a conviction for murder in the first degree, and upon which it was, held that the court did not err in refusing to charge the law of manslaughter.

Appeal from the Criminal District Court of Harris. Tried below before Hon. E. D. Cavin.

Appellant was tried under an indictment charging him with the murder of one James E. Fenn. This is the second time that defendant has been tried under said indictment and convicted of murder in the first degree, the penalty being assessed on both trials at death. An appeal was taken from the first conviction, and the judgment reversed on account of the admission of incompetent and illegal testimony. See McGee v. The State, 29 Texas Ct. App., 596.

The evidence, as adduced on the second trial, from which this appeal is taken, is substantially stated in a very succinct but sufficient statement

to be found in the opinion of the court, and it is unnecessary to add anything thereto.

No brief for appellant has come into the hands of the Reporter.

*R. H. Harrison*, Assistant Attorney-General, for the State.

*C. W. Bocock* and *Uvalde Burns*, for appellant, filed a motion for rehearing, which motion was overruled.

SIMKINS, JUDGE.—The appellant was tried and convicted for the murder of James E. Fenn, at the April Term, 1891, in the Criminal District Court of Harris County, and his punishment assessed at death, but the judgment was reversed and the cause remanded at the Austin Term, 1891, of this court, because of the admission of improper testimony.  29 Texas Ct. App., 596.  At the April Term, 1892, of the Criminal District Court of Harris County, appellant was again tried and convicted, and his punishment again assessed at death, from which judgment he appeals to this court.

1.  Appellant complains that the court erred in overruling his motion for a continuance.  It was a third application, and most of the witnesses, for whose absence the continuance was asked, were also contained in the first or second applications, made in April and December, 1891.  The State filed a contest of said motion, on the ground that the said absent witnesses were not present at the place where the difficulty occurred, and that they were and are but fictitious persons.  On examining the evidence found in the contest, we do not think that the court erred in overruling the application for a continuance.  It is very probable, as shown by the testimony and the returns of several officers in different counties, that the most of these witnesses had neither local habitation nor existence, but only a name, and the rest not present, as stated in contestant's answer. Neither did the court err in hearing the testimony of the State's witness Anderson, in regard to the absent witness Bill Smith, to the effect that the said Bill Smith had been recently released from jail, and had not been seen since he was released from jail.  Nor can the defendant complain that the evidence upon the contest of defendant's motion was heard in open court, in the presence of some of the special veniremen who were to try this cause.  It could have been heard nowhere else, and the veniremen were present in obedience to a summons of the court.  This being the third application, it would require a much stronger showing than this to warrant this court in interfering with and controlling the discretion of the trial court in overruling a motion for a third continuance.  Grissom v. The State, 8 Texas Ct. App., 391; Burrell v. The State, 18 Texas, 729.

2. The appellant complains that the court admitted the testimony of Mike Shea and Frank Michael, as to defendant's acts and statements after the killing of Fenn. The statement of facts shows that on the night of March 14, 1891, there was a negro dance at a place in the city of Houston known as the "Broom Factory." James E. Fenn, the deceased, was a police officer, and had been sent down by the chief of police to preserve order at the dance. It was customary to have an officer at these dances, and Fenn had been sent there before for a like purpose. He was very popular with the colored people. The defendant had been arrested by deceased some time before for shooting a pistol, and had threatened to kill him if he, defendant, was ever sent to the poor farm in consequence of an arrest. Defendant attended the dance, came up to the counter upon which Fenn was sitting, drank a glass of beer, and walked to the other side of the room. Mike Shea, one of the witnesses, testified, that while standing by Fenn, he saw when defendant came into the house. That he came up close to where Fenn was sitting, and as he passed he looked Fenn straight in the face. After taking his glass of beer, he walked back to where the music was. Very soon afterwards a pistol was fired, and Fenn and another officer, Frank Michael, went in the direction of the pistol shot, where a man stood flourishing a pistol in his right hand. As they got close to him, he deliberately lowered the pistol in front of him, and holding it in both hands, fired upon Fenn and killed him. Michael sprang at defendant, and caught him from behind. A struggle ensued, and defendant being unable to use the pistol with which he was trying to shoot Michael, threw it to another negro, saying, "Shoot the damn son of a bitch." The other negro grabbed the pistol and snapped it at Michael's head, and he then turned defendant loose, who immediately fled. The deceased was unarmed at the time of the shooting. Was known by defendant to be a policeman. Only a few moments before the shooting, a witness, Mike Shea, warned him that defendant was the man who had threatened his life, and offered to loan him a pistol, but Fenn declined it.

The vital and perhaps the only question in the case was the one of identity. Did defendant shoot the deceased? The witness Michael, who grabbed defendant immediately after the shooting, did not know defendant, and could not positively identify him upon the trial as the man who shot the deceased, but in addition to swearing that defendant answered the description, both as to size and color, of the man who killed Fenn, he swore that the man whom he caught and had the struggle with was the man who shot Fenn; and the only pistol that he saw that night was the one held by the man who shot Fenn; that he threw the pistol down on Fenn deliberately, catching it in both hands, and fired; and when witness first caught at him he aimed at witness. But other witnesses in the

case, who did see the shooting, identified, beyond all question, defendant as the man flourishing the pistol in his hand, and with whom the officer, Mr. Michael, had the struggle.

The defendant complains that the court erred in permitting the witnesses Mike Shea and Frank Michael to testify to what defendant did and said after shooting deceased, on the ground that it tended to elicit immaterial testimony and prejudice defendant's case. We are unable to appreciate the force of this objection. What was said and done by defendant was unquestionably a part of the same transaction, and was admissible, not only as a part of the res gestæ, but was admissible for the reason it was the act and declaration of defendant himself. Mr. Wharton says: "Nor is there any limit of time in which the res gestæ are arbitrarily confined. They vary with each particular case. They need not be coincident as to time if they are joined by the existing feeling which exists, without break or let-down, from the moment of the event they elicit." Whart. Crim. Ev., 8 ed., 262, 263. See Powers' case, 23 Texas Ct. App., 67; Bradberry's case, 22 Texas Ct. App., 273; Cartwright' case, 16 Texas Ct. App., 473; Lewis' case, 29 Texas Ct. App., 201; Weathersby's case, 29 Texas Ct. App., 279; Boothe's case, 4 Texas Ct. App., 202. We are of opinion that the evidence was clearly admissible.

3. Defendant also objected to the reproduction of the evidence of Tampy Jackson, a witness who testified at a former trial of this case, on the ground that a sufficient predicate had not been offered by proving the actual death of said witness. We think the predicate was fully and sufficiently laid for the introduction of said testimony, and the testimony was correctly received. Evans v. The State, 12 Texas Ct. App., 384.

4. The defendant also complains of the action of the court in permitting Dan Goins to testify as to the statements made by the defendant to him on the night of the killing of James E. Fenn. The witness stated that on the night of the killing, between 11 and 12 o'clock, the witness was called to the door of his house by the defendant, who told him that he, defendant, had played hell; that he had killed two damn white officers at Broom Factory, and that defendant had a pistol with him. The objection to this statement was, that it was made too long after the killing, was not voluntarily made, and did not relate to deceased. These objections were correctly overruled. It was but a short time after the killing, and could have had but one reference, and one meaning, and, being the statement of the defendant himself, was admissible.

5. The defendant further complains that the court erred in not charging upon manslaughter. We think that the charge of the court was sufficiently comprehensive, and covered the entire case; that there was not a single circumstance in the whole occurrence calling for a charge on manslaughter. If the witnesses are to be believed, who testified in this case, it seems to have been a deliberate and cold-blooded murder—the firing

of the pistol to draw the officer, and then to kill him in attempting to discharge his duty.    We think the evidence sustains the verdict.    After a careful investigation, we find no error, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.