## Walter LaGrone v. The State.

### No. 820. Decided February 8, 1911.

Rehearing denied March 8, 1911.

1.—Murder—Evidence—Bill of Exceptions—Qualification—Declaration of Deceased—Charge of Court.

Where, upon trial of murder, the record showed upon appeal that the bill of exceptions was so qualified that the declaration of the deceased to a State's witness, to the effect that the defendant had threatened to kill him, was made so that the defendant could have heard it and did hear it, there was no error in its admission in evidence, especially where the court charged that such threat would not impair the defendant's right of self-defense if deceased attacked him.

2.—Same—Evidence—Circumstantial Evidence.

Where, upon trial of murder, the evidence showed that the defendant fled the country immediately after a certain conversation with the State's witness, in which said witness had said that defendant must quit squabbling with some of the road hands who were at work with the defendant upon a public road under said witness, there was no error, as up to that time there was no positive proof that defendant had killed deceased the day before.

3.—Same—Argument of Counsel—Practice in District Court.

Where, upon trial of murder, the district attorney said in his argument that the defendant was a criminal and a murderer, and the court submitted a requested special charge withdrawing these remarks from the jury, there was no error; besides, the remarks may have been the deductions of counsel from the evidence.

4.—Same—Charge of Court—Self-Defense—Charge as an Entirety.

Where, upon trial of murder, the charge of the court upon self-defense, when considered as an entirety, did not improperly restrict the right of self-defense, and submitted the question from defendant's standpoint, there was no error.

5.—Same—Charge of Court—Motion for New Trial.

Where the motion for new trial criticised the charges of the court, and the record upon appeal showed that the trial court fairly presented the law applicable to the facts, there was no error.

**6.—Same—Evidence—Bill of Exceptions—Practice on Appeal.**

When no bill of exceptions is reserved to the introduction of testimony the matter can not be reviewed on appeal.

**7.—Same—Charge of Court—Accomplice Testimony.**

Where, upon trial of murder, the evidence did not raise the issue of accomplice testimony, there was no error in the court's failure to charge thereon.

**8.—Same—Statement of Facts—Practice on Appeal.**

The law requires that the statement of facts must be filed in duplicate in the District Court in felony cases, and the original must be sent with the papers to the Appellate Court.

Appeal from the District Court of Wood County. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The State's testimony substantially showed that deceased, defendant and others were working on a public road under a road overseer on the day of the homicide; that deceased on the morning of the homicide claimed that he was sick and was excused by the overseer; that about that time defendant was heard by some of the State's witnesses to curse deceased and threatening to kill him with an axe; that deceased, after being excused and in leaving his work, at a point where a certain road forked, stated to a State's witness that defendant had cursed and threatened to kill him and that he did not know why he was mad at him unless it was about a certain negro woman (both defendant and deceased being negroes); that deceased said this while defendant was standing near enough to hear it if he was listening; that shortly after this defendant passed said witness and others going up the road taking the left fork of the road, and that then deceased went in the same direction on another fork of the road, said forks running parallel and close together; that defendant had at the time an axe in his hand with which he had been working on the road, and later on cut a stick and carried it with him; that deceased had only a small dinner bucket in his hand when he went up the road; that within a short time thereafter someone holloaed in the direction where the defendant and the deceased had gone, and within a few minutes defendant returned with his axe, but dropped the stick before reaching the other road hands; that defendant then went to his boarding-house, which was kept by the woman alluded to and there changed his shoes and then returned to work; that the deceased was missing and did not return that night, and this fact was remarked upon at supper in defendant's presence, who said nothing; that the next morning the defendant asked the State's witness Hindman, under whom he worked, whether he was to work that day and was told by Hindman that he was, but that he wanted him to quit squabbling with the boys, as he had heard he did the day before; that defendant said he would and would go to work, but that he did not do so, but immediately returned to his said boarding-

house and told the said negro woman that they were going to look for the deceased, and if they found him dead the defendant would be accused of killing him, as all the negroes out there had it in for him; that he gave the woman his time check and told her he was going to leave and then left; that defendant made these same remarks about leaving and as to the search for the deceased to several other State's witnesses the next morning after the homicide; that deceased was found the next day after the homicide near the road, and that his death was caused by a large gash in his head apparently made by the sharp end of an axe; that near the body was a mark on the ground as if an axe had been stuck there, the tracks of a man, and other circumstances.

One of the State's witnesses testified that a few minutes after the defendant and deceased had been seen going up the road he saw the defendant running the deceased, and that defendant had an axe in his hand as if to strike him, and that defendant afterwards told witness to say nothing about this. There was some contradiction in the testimony of the witnesses as to whether defendant or deceased first went up the road and as to what fork of the road they took, and as to what either of them said before going there; some not hearing anything said by either, and others testifying that they heard defendant's threats and the declarations of the deceased that defendant had so threatened him. There was also some contradiction in the testimony of the State's witnesses as to the question of the position of the parties and the witnesses, and whether the country was open or bushy about the scene of the murder, but they all agreed that the deceased had nothing in his hand but the little tin bucket, which was afterwards found by his dead body.

The defendant testified that he did not curse the deceased or threaten to kill him at any time; that when he went up the road, as testified to by State's witnesses, he did so to answer a call of nature, and that he stuck his axe in the ground before seating himself a little distance away, and in returning to this place where he had left the axe, deceased appeared suddenly and said that now was a good time to settle their troubles, and then ran to get the axe and that they had a struggle over it, deceased first getting it and the defendant then taking it away from him and that when deceased tried to repossess himself of it he struck at him with the dull end of the axe in self-defense and then left, not knowing whether he had killed him or not, etc.

*Jones, Cathey & Jones,* for appellant.—Upon question of admitting declarations of deceased as to defendant's threats: Long v. State, 13 Texas Crim. App., 212; Sauls v. State, 30 Texas Crim. App., 496.

Upon question of admitting statement of witness to defendant that he must quit squabbling, etc.: Roberts v. State, 107 S. W. Rep., 59.

Upon question of argument of State's counsel: Ware v. State, 49

Texas Crim. App., 413, 92 S. W. Rep., 1093; Kugadt v. State, 38 Texas Crim. Rep., 681; Morris v. State, 39 Texas Crim. Rep., 371; Byrd v. State, 39 Texas Crim. Rep., 609.

Upon question of court's charge on self-defense: Bell v. State, 20 Texas Crim. App., 445; Cochran v. State, 28 Texas Crim. App., 422; Kendall v. State, 8 Texas Crim. App., 569; Orman v. State, 22 Texas Crim. App., 604; Williams v. State, id., 497; Kelly v. State, 27 Texas Crim. App., 562; Hunnicutt v. State, 20 Texas Crim. App., 633; Fuller v. State, 30 Texas Crim. App., 560; McCandless v. State, 57 S. W. Rep., 672.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question that no statement of facts shall be incorporated in the transcript: Frenzell v. Lexington Land & Abstract Co., 126 S. W. Rep., 907; Vickrey v. Burks, 121 S. W. Rep., 177.

HARPER, Judge.—The appellant was charged with murder in the District Court of Wood County, found guilty, and sentenced to the penitentiary for life.

1. A witness, Dave Hawkins, was permitted to testify: "I had a conversation with L. P. Adams (the deceased); he told me that Walter LaGrone (the defendant) had cursed him that morning; he said Walter was mad at him about something—he did not know what it was—unless Walter was jealous of deceased and Ziller Morris. L. P. Adams told me that defendant had told him (Adams) that he was going to kill him. Walter LaGrone (defendant) was just across the public road talking to Lincon Pigg. He was close enough to have heard it if he was listening. He was in about fifteen feet of us." Appellant objected to the testimony, as shown by the bill of exception, on the ground, "that it was a conversation between deceased and the witness, and the witness did not and could not testify that defendant heard it." The court approves the bill with this qualification: "From the testimony of the witness I was of the opinion that the conversation between deceased and witness could have been and was heard by defendant." In Hardy v. State, 31 Texas Crim. Rep., 289, it is held "that the court's qualification or explanation of the bill of exceptions will control the recitals in the bill insofar as such explanation modifies such recitals," and in Jones v. State, 33 Texas Crim. Rep., 7, it is held that where the party accepts and files the bill, he is estopped to deny that it is incorrect. The testimony places the defendant in position where he could and probably did hear the statement, and it is a question for the jury to determine whether or not he heard it. In Holden v. State, 18 Texas Crim. App., 91, Judge White says, in passing on a similar objection: "In this case it is proven that the admission was made in the presence of defendant, and he was close enough to have heard it. . . . Under such state of case the evidence was admissible, and it may be

inferred that he did hear it, and the evidence was admissible against him even though at the time he had not been charged with or prosecuted for complicity in the crime," citing 2 Wharton Ev. (2d ed.), sec. 1136. The court gave the special charge requested by defendant on this matter, that even though the jury believed from the evidence that defendant threatened the life of deceased at the forks of the road, still defendant had the right to defend himself if he was attacked by deceased with an axe.

2. Objection was also made to admitting the testimony of S. H. Hindman, who testified that on the morning after the killing he had a talk with defendant, who was working for him, and in that conversation he had said to defendant that he (the witness) had been told that defendant had been "squabbling with some of the boys on the road the day before," and that he told him he must not squabble with the other men, when defendant answered that he had not had any trouble. The judge in approving this bill states that the evidence showed the defendant, although he had promised to work that day, immediately fled the country after this conversation. Up to the time defendant took the stand in his own behalf, there was no positive proof that he had killed deceased the day before. The State was endeavoring to make a case against him by circumstantial evidence, and we think the testimony admissible, in the light of all the testimony. Ballew v. State, 36 Texas, 98; Langford v. State, 17 Texas Crim. App., 445, and cases cited.

3. The appellant reserved an exception to the remarks of the district attorney when he said that defendant was a criminal and a murderer, and requested a special instruction, which was given by the court, that the jury "would not consider the remarks of the district attorney that defendant is a criminal and a murderer, because the same was improper." The remarks may have been the deductions of the attorney from the evidence. Certainly, there was no error of which the appellant could complain when the court gave the special instruction at his request. Barkman v. State, 52 S. W. Rep., 69. In the case of Thomas v. State, 33 Texas Crim. Rep., 608, Judge Hurt held that under the facts of that case it was not improper for the district attorney to state that "the defendant murdered F. while he was asleep in bed, and after brutally killing him with an axe the defendant robbed him of his money, his clothes, his horse and buggy, and he should suffer the death penalty." In this, if the jury believed the State's theory, the defendant ought not to complain of the punishment inflicted.

4. Complaint is made that the court's charge in presenting the law of self-defense restricted the right of defendant to kill deceased to the very time the deceased was assaulting him, and did not present the view that the circumstances must be viewed from defendant's standpoint. If we should look alone to the first section of paragraph 22 of the charge, the criticism might seem to be well taken,

but when we read the entire paragraph presenting the law of self-defense, the court in the third section of said paragraph tells the jury that if they find beyond a reasonable doubt that defendant killed deceased, "it is not essential that there should have been any actual or real danger to defendant's life or person. If deceased made an unlawful attack upon defendant or did any act or made any demonstration which produced in the mind of defendant, viewing all the facts from defendant's standpoint, a reasonable expectation or fear of death or some serious bodily injury, and if defendant killed deceased under such reasonable expectation or fear arising from such acts or demonstrations, he was justified in so doing, and in law it would make no difference whether the danger to defendant's life was real or imaginary, if it had the appearance to him of being real, viewed from his standpoint." Taking the evidence into consideration, we think the court presented the law on this question as favorably to defendant as he could ask, and if as suggested by defendant the charge is more favorable than the facts justified, defendant can not complain. Green v. State, 32 Texas Crim. Rep., 298.

5. The above are all the grounds presented in appellant's brief, but in looking into the record we find other grounds stated in the motion for a new trial. We have carefully considered all of them, and do not think the court's charge subject to the criticisms contained in the motion. The court fairly presented the law applicable to murder in the first and second degree, manslaughter, and self-defense, the jury returning a verdict of murder in the first degree, and the punishment at life imprisonment. There are no bills of exception in the record upon which to predicate the assignments of error contained in first, second, fourth, fifth, seventh, eighth, ninth, tenth and eleventh grounds of the motion for the new trial, and this court can not review the action of the court in admitting the testimony. There is nothing in the record to suggest that witnesses Lee Hall and Dave Hawkins were accomplices of defendant in the commission of the offense, and the court did not err in failing to charge on accomplice testimony.

6. In this case the statement of facts was copied in the transcript. The Assistant Attorney-General filed a motion to strike out the statement of facts. We granted a writ of certiorari requiring the clerk to send up the original statement of facts in this case, but we want to call the attention of attorneys to the fact that the law now requires the statement of facts to be filed in duplicate in felony cases, and the original to be sent with the papers to this court. We do not desire that anyone be deprived of his right of appeal, but we must insist upon a compliance with the law.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

[Rehearing denied March 8, 1911.—Reporter.]