## Monroe McKelvey v. State.

No. 2311.    Decided March 5, 1913.

Rehearing denied April 16, 1913.

1.—Murder—Indictment—Date Figures.

Where the date of the indictment was written so that it was clearly discernible as to what figure was intended in stating the date, there was no error.

2.—Same—Continuance—Witnesses—Immaterial Testimony.

Where the alleged absent testimony was contrary to the testimony of other eyewitnesses to the transaction, and others who were in attendance at court and could have testified thereto were not introduced, there was no error in overruling the motion for continuance; besides, some of the testimony was entirely immaterial.

3.—Same—Evidence—Witnesses—Other Offenses.

Where defendant sought a continuance or postponement of the case until other parties could be tried who were indicted for separate and distinct offenses, and who could have been introduced as witnesses before they were tried, there was no error in overruling the motion.

4.—Same—Evidence—Declarations of Third Party—Res Gestae.

Where, upon trial of murder, the State was permitted to introduce a declaration by a third party asking why the defendant had committed the act, to which he made no reply, and which was said in his hearing and threw light on the transaction, being made just thereafter, there was no error. Following Ryan v. State, 64 Texas Crim. Rep., 628, and other cases.

5.—Same—Evidence—Remarks by Court—Conduct of District Attorney.

Upon trial of murder, there was no error in the remarks by the court to defendant's counsel that if they knew of any improper conduct by the district attorney they could prove it, but would not be allowed to take the time of the court by fishing around to see what they could prove.

6.—Same—Jury and Jury Law—Challenge.

Where seven men had been selected and sworn as jurors, the district attorney, during an intermission, was informed that one of them had formed and expressed an opinion to which he called the attention of the court, who retired the other six jurors and investigated the matter, and the juror was then accepted by both parties after the court had stated he would sustain the peremptory challenge, there was no error.

7.—Same—Evidence—Threats.

Where, upon trial of murder, the declarations of the defendant showed that he referred to deceased when he made the threat that he was going to kill someone, there was no error in admitting same in evidence. Following Godwin v. State, 38 Texas Crim. Rep., 466.

8.—Same—Evidence—Self-serving Declarations.

Where, upon trial of murder, the declarations of the defendant after the homicide showed calmness and deliberation and were not the events speaking through the defendant, the same was self-serving and inadmissible in evidence; besides, the same was contradictory of his testimony, and if error, was harmless.

9.—Same—Charge of Court—Manslaughter—Adequate Cause.

Where, upon trial of murder, the court, in submitting a charge on manslaughter, properly instructed the jury as to what would constitute adequate cause under the evidence, there was no error.

**10.—Same—Charge of Court—Self-Defense—Invited Error.**

Where the court's charge on self-defense was peculiarly applicable to the facts, and a virtual copy of defendant's charge, there was no error. Following Cornwell v. State, 61 Texas Crim. Rep., 122.

**11.—Same—Charge of Court—Verdict by Lot—Words and Phrases.**

Where the court instructed the jury that they could not reach a verdict by lot or chance, etc., defendant's contention that he should have instructed the jury that if they found defendant guilty, they could not arrive at a verdict by lot, etc., was untenable, and the court's charge was not on the weight of the evidence when read in connection with other portions of the charge.

Appeal from the District Court of Bell.   Tried below before the Hon. John D. Robinson.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*A. W. Gibson* and *James F. Hair,* for appellant.—On question of not permitting other defendants who were indicted for other and distinct offenses to testify:   Doughty v. State, 18 Texas Crim. App., 179; Bennett v. State, 47 Texas Crim. Rep., 52 Dodson v. State, 52 id., 247.

On question of admitting declarations of third party:   Felder v. State, 23 Texas Crim. App., 477; Bookser v. State, 26 id., 593.

On question of challenge of juror:   McCampbell v. State, 37 Texas Crim. Rep., 607; Brown v. State, 38 Texas, 483; Sterling v. State, 15 Texas Crim. App., 249; Wilson v. State, 18 id., 576; Grissom v. State, 4 id., 374; Early v. State, 1 id., 248.

On question of admitting threats:   Maclin v. State, 65 Texas Crim. Rep., 384, 144 S. W. Rep., 951; Rogers v. State, 67 Texas Crim. Rep., 467, 149 S. W. Rep., 127; Fuller v. State, 54 Texas Crim. Rep., 454, 113 S. W. Rep., 540;   Holland v. State, 55 Texas Crim. Rep., 27, 115 S. W. Rep., 48.

*C. E. Lane,* Assistant Attorney-General, and *John L. Ward,* District Attorney, for the State.—On question of challenging juror: Mitchell v. State, 43 Texas, 512.

On question of remarks by court:   Stayton v. State, 22 S. W. Rep., 38; Chalk v. State, 32 S. W. Rep., 534.

On question of declarations of third party:   Smith v. State, 90 S. W. Rep., 638; Keeton v. State, 59 Texas Crim. Rep., 316, 128 S. W. Rep., 404; Wynne v. State, 59 Texas Crim. Rep., 126, 127 S. W. Rep., 213; Kinney v. State, 65 Texas Crim. Rep., 25, 144 S. W. Rep., 257; Redman v. State, 68 Texas Crim. Rep., 149 S. W. Rep., 670.

On question of threats:   Mathis v. State, 28 S. W. Rep., 817; Hilvenston v. State, 53 Texas Crim. Rep., 636, 111 S. W. Rep., 959; Godwin v. State, 43 S. W. Rep., 336; Taylor v. State, 72 S. W. Rep., 396; Armstrong v. State, 50 Texas Crim. Rep., 467, 98 S. W. Rep., 844; Marchan v. State, 75 S. W. Rep., 532.

On question of self-serving declarations: Deneanor v. State, 58 Texas Crim. Rep., 624, 127 S. W. Rep., 202; Pryse v. State, 54 Texas Crim. Rep., 523, 113 S. W. Rep., 938; Ford v. State, 50 S. W. Rep., 350.

On question of verdict by lot: Lankster v. State, 72 S. W. Rep., 388; Hart v. State, 82 S. W. Rep., 652.

HARPER, Judge.—Appellant was prosecuted and convicted of murder in the first degree, and his punishment assessed at life imprisonment in the penitentiary.

The State's evidence would show that appellant was running a restaurant at Temule, and had as one of his waiters Jett Haley, a woman whose virtue was questionable, to say the least. Prior to the time she went to work for appellant as a waiter, she admits she was boarding and staying with a woman who was known as a prostitute. That while staying with this woman she was frequently visited by appellant, and was also quite as often visited by deceased. Appellant subsequently employed her in his restaurant, and she slept in the restaurant, appellant also sleeping in this building. On the day of the homicide she went from the restaurant to the home of the woman with whom she had formerly boarded; that in addition to Mrs. Gray and Jett Haley two other women were present, Minnie Nunnerly and Bessie Harris, both of whom were also of questionable virtue. During the evening deceased and some four or five other men went to this house, but at the time the homicide was committed all the men had left but deceased, who was sitting in a room with the four women. It is also shown that these people had a keg of beer, and perhaps some bottled beer, and they imbibed pretty freely. According to the women appellant appeared at the back door of Mrs. Gray's house, entered, having a drawn revolver in his hands, and asked Mrs. Gray, "Where is Jett?" and upon being informed that she was in the other room, he went into this room, and seeing deceased, shot and killed him. Jett Haley fled when she heard appellant ask Mrs. Gray where she was, and did not witness the shooting, but the other women say that deceased had begun to arise from his chair when the first shot was fired; that he had no weapon, and made no remark or demonstration, but appellant walked in and killed him, without a word being spoken by either man. Appellant testifies, and says he went to the home of Mrs. Gray in search of Jett Haley; that he asked the question Mrs. Gray says he did, but denies having any weapon in his hand at the time; that deceased was a larger and stronger man than himself, and deceased at once attacked him. To use his language, he says: "Howard got up and struck me. Struck at my face, and I dodged the lick and he struck my arm, and he grabbed me. He was a larger man than I was, and was trying to get me down on the floor. I got my gun out, and he grabbed my gun and we tussled around there a little while in the room, and the gun fired a couple of times in the

room. I gave a big jerk, and when I jerked away from him I slipped and fell, and when he come at me again I shot him and turned round and ran out of the room." He also says he had been informed prior to this time that deceased intended to kill him. This is a sufficient statement of the facts, as the other evidence will be discussed in passing on the questions raised.

Appellant moved to quash the indictment on the ground that it charged an impossible data, the contention being that where the indictment alleges the offense to have been committed "on or about the 31st day of August, 1912," the "two" is so written that it is not clearly discernible what was intended. This contention can not be sustained. The figure "two" is plainly enough written for anyone to discern what figure was intended; in fact, is exactly like another two written in the indictment.

Appellant complains of the action of the court in overruling his application for a continuance. By one of the witnesses, Fred Wagner, he states he expects to prove that Mrs. Gray shortly after the killing hired him, Wagner, to have a beer keg taken away from her premises and hide the same. As all the witnesses testify to this keg of beer being on the premises at the time and prior to the shooting, this would not be material evidence. He further states that he expects to prove that the women, after the shooting, were intoxicated to the extent that they could not know and intelligently remember what took place. Appellant himself testified as did every other eyewitness to the transaction, and none of them so state in their testimony. The record shows that the men who were with these women just prior to the shooting, were in attendance on court and none of them introduced to prove that fact. So we are of the opinion the court was authorized to hold that if the witness was present he would not probably so testify, and if he did, it was not probably true.

Appellant also complains that at the same term of court Cecil Tosh and Peter Hawthorne were indicted by the grand jury, not for complicity in this offense, but for separate and distinct offenses, and he alleges that these indictments were obtained by the district attorney to affect their credit as witnesses. That he desired to use these two men as witnesses, and moved the court to continue his case until they had been tried for the offenses with which they were charged; that if he would not continue the case, to hear evidence and determine whether or not the men were guilty of the offense with which they were charged. Had they been indicted for complicity in this homicide, either as a principal or accomplice, our statute provides that by making the proper application their trial should have first been had. But as they were not charged with complicity in the offense for which appellant was being tried, the indictments against them did not disqualify them as witnesses, and it was not necessary to postpone this case until they were tried or hear evidence to determine whether or not they were guilty of the offense charged against them.

While the witness Mrs. Cordie Gray was testifying she was permitted to state in answer to the question: "What did you say to the defendant just after the shooting," that she asked him, "My God, what on earth made you do that? My God, this is awful," and that appellant made no reply. Appellant does not deny in his testimony hearing this woman propound this interrogatory to him, nor that he vouchsafed any answer thereto. This was so closely connected with the shooting as to be almost if not a part of the transaction. The State was contending that appellant walked into the room and shot deceased without provocation, while appellant was contending that deceased assaulted him, licks were passed, and a scuffle was had before the shot was fired. This remark made at the time it was made threw light on the transaction, and would aid the jury in determining which theory was correct, and was properly admitted. Ryan v. State 64 Texas Crim. Rep., 628, 142 S. W. Rep., 78; LaGrone v. State, 61 Texas Crim. Rep., 170, 135 S. W. Rep., 121; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967, and cases cited on page 984; Wynne v. State, 60 Texas Crim. Rep., 660, 127 S. W. Rep., 213; Kinney v. State, 65 Texas Crim. Rep., 251, 144 S. W. Rep., 257; Kelton v. State, 128 S. W. Rep., 404.

While the witness Minnie Nunnerly was testifying, on cross-examination, appellant propounded a question, to which the State objected, and in sustaining the objection the court remarked: "If you know where the improper work is, you can prove it, but you can not take the time of the court fishing around." Exceptions were reserved to the remark of the court, and in approving the bill the court states: "Counsel for the defendant had proceeded in interrogating the witness Minnie Nunnerly in regard to what they seemed to believe was improper conduct on the part of the district attorney and justice of the peace at Temple in their conduct of an ex parte examination of the witnesses and investigation into the homicide after it occurred. The court had permitted many questions by counsel for defense, but no question had elicited any improper conduct so far as this witness knew. The court had stated to counsel for defense, if there was improper conduct on the part of the officers intimidating this witness or any other witness, that they would be granted the widest opportunity in uncovering it. Many more questions were asked the witness in regard to the conduct of the officers and the court believed that nothing improper had been shown from the testimony of the witness as having been committed by the district attorney or justice of the peace in the statements taken, and investigation made by them, and when objection was made the court stated to counsel that if they knew of any improper work having been done by the district attorney and could prove it, they could do so, but that they should not take the time of the court fishing around to see what they could show by the witness." Under such circumstances the remark of the court

presents no error, as it seems to have been elicited by the conduct of defendant's counsel.

Another bill shows that after seven men had been selected and sworn as jurors to try this case, during an intermission the district attorney was informed that one of them so selected, J. D. Allen, had formed and expressed an opinion. He called the court's attention to the matter, when at the request of counsel for the State and defendant the other six jurors were sent into an adjoining room in charge of an officer, while the juror Allen was further examined. After hearing the evidence adduced, the court stated that he would sustain a peremptory challenge to the juror if the counsel for the State or defendant desired to challenge him, when the juror was again accepted by State's and defendant's counsel, and was a member of the jury that tried appellant. This bill presents no error. The court showed extreme fairness in the matter by telling counsel he would sustain a challenge for cause if either desired to make it, and not having done so, no complaint can subsequently be made.

In another bill it is shown that Leon Wilson was in the restaurant of appellant a short time before the killing, and in a conversation with appellant, and appellant had said, "He was going to vote a negro, and in about twenty minutes he was going to kill a damned son-of-a-bitch." The testimony further shows that he immediately armed himself with the pistol that he used in slaying deceased; that in a short time he did go to the polls; that a negro was at the polls with him, and that when he left the polls, he went direct to the place of residence of Mrs. Gray, and by the State's testimony, that he walked into the room where deceased was sitting, with the pistol in his hands and deliberately killed deceased. It is true as contended by appellant, that to render threats admissible in a homicide case, our decisions have stated that the facts and circumstances must individuate the deceased as the person in regard to whom the threats were made. In this case we think the evidence offered in behalf of the State would clearly show and authorize the jury to find that appellant referred to deceased when he made the threat, and, therefore, the testimony was properly admitted. (Godwin v. State, 38 Texas Crim. Rep., 466.)

While the witness Lucias Green was testifying, the defendant proved by the witness that after the shooting was over appellant came to him and got in his buggy, and he drove appellant to the city. That while on the way to the city appellant made a statement to him in regard to the difficulty, which would be what is termed a self-serving declaration. If not res gestæ it would not be admissible, and the court sustained an objection to its admissibility. Appellant insists it was res gestæ of the transaction. The time when the statement was made by appellant to Green elapsing between the shooting and the alleged statement, is variously stated in the record, but it may be said that it was not so remote as to exclude the statement from being res gestæ

on account of lapse of time alone. The question is, do the facts and circumstances connected therewith show that state of mind which would evidence that it was but the events speaking through appellant, or do the facts and circumstances show calmness and deliberation on the part of appellant, and that he was but speaking about the event. We think the latter is true, but if mistaken in this, the exclusion of this testimony could have not been hurtful to defendant. He himself testified, and told how the transaction occurred and if the witness Green had been permitted to testify to what he claimed appellant had told him, such statement would have contradicted appellant's testimony on the trial, and under such circumstances, in no event, do we think the exclusion of this testimony would be reversible error.

The court in his charge submitted the issues of murder in the first and second degrees, manslaughter and self-defense. In no part of the motion is complaint made of the charge of the court on murder in the first or second degree. There are several complaints that the court in his charge did not properly define "adequate cause" as applicable to the facts of this case. The court in this respect charged the jury:

"By the expression, 'adequate cause,' is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficiently to render the mind incapable of cool reflection.

The following are deemed adequate causes: "An assault and battery by the deceased causing pain would be adequate cause, but you are further charged that all circumstances and conditions which are capable of creating and do create sudden passion, in the mind of a person of ordinary temper sufficient to render the mind incapable of cool reflection, would be adequate cause, and in the event that several of such circumstances or conditions should be found by you to exist, they should be taken together by you in determining whether adequate cause existed.

"In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause existed to produce the state of mind referred to, that is, of anger, rage, sudden resentment or terror, sufficient to render it incapable of cool reflection, but also that such state of mind did actually exist at the time of the commission of the offense, and that it was produced by such adequate cause.

"Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty in determining the adequacy of the provocation (if any), to consider in connection therewith, all the facts and circumstances in evidence in the case, and if you find that, by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so in this

case you will consider all the facts and circumstances in evidence in determining the conditions of the defendant's mind at the time of the alleged killing, and the adequacy of the cause (if any) producing such condition.''

This we think properly instructed the jury as to "adequate cause" under the evidence, and the complaints of these paragraphs of the court's charge are without merit.

The court's charge on self-defense was fair and peculiarly applicable to the facts in this case. The charge as given was a virtual copy of appellant's charge No. 7 requested, and under such circumstances he would not be heard to complain, for if error there be, the error was invited in requesting that this charge be given. Cornwell v. State, 61 Texas Crim. Rep., 122, 134 S. W. Rep., 221.

The only other ground in the motion for new trial we deem it necessary to discuss is the one complaining of that portion of the charge which instructs the jury they can not reach a verdict by lot or chance, etc. Appellant's contention is that the court should have instructed the jury, "If they found appellant guilty, they could not arrive at a verdict by lot or chance," etc., and by the omission of these words the charge as given was calculated to impress the jury with the belief that the court was of the opinion that appellant was guilty. It would have been better that the court had used the words "if the jury found appellant guilty" in beginning this paragraph, but when we read the charge as a whole we do not think such a construction could have been placed by the jury on this paragraph. The court not only instructed the jury as to reasonable doubt generally, but also as to reasonable doubt as between degrees of the offense, and the charge as a whole presents the case in a way that no part of it can be said to be on the weight to be given the testimony or any portion thereof, nor impress the jury that the court entertained any opinion in regard to his guilt or innocence.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied April 16, 1913.—Reporter.]