OMER SMITH v. THE STATE.

No. 19683.   Delivered June 1, 1938.
Rehearing denied October 12, 1938.

The opinion states the case.

*J. Mitch Johnson,* of San Saba, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is murder; the punishment is confinement in the State Penitentiary for life.

The record shows that on or about the 20th day of April, 1937, appellant took a sister of the deceased with him to Corpus Christi, where a mock marriage ceremony was performed. Thereafter they lived together as man and wife until a short time prior to the homicide. On the 4th day of June he became angry at her, chained her to a bed and whipped her.

A few days later she went home to her parents and told them and also her brother how appellant had abused and mistreated her. It seems that during the chastisement she warned him that he would be sorry some day for the way he was treating her. He replied that he was unafraid of any of her people; that he would kill them all, including the deceased, if he had to shoot them through a window.

On the afternoon of the alleged homicide, appellant, accompanied by one Kattes and Lillian Tullos, drove down into the pasture of Mr. Nast, parked their car about 200 yards from the home of the deceased's father. From this point Kattes and Lillian Tullos proceeded to the home of the deceased's father, with a view of luring the sister from the house and taking her to the appellant, who had instructed them as to the means to be used in getting her to come with them. In the meantime appellant, with a shotgun, secreted himself in some bushes near the parked car. The father of the deceased became suspicious of the conduct of the visitors, took his gun and proceeded to make

some investigations. The deceased, who was unarmed, followed his father. When they had reached a point near the bushes, appellant rose and fired, killing the deceased. The father shot at the appellant, who was then running away. These are, in brief, the material facts established upon the trial. Appellant did not testify, but offered witnesses who testified that appellant and deceased were friends; that a short time prior to the homicide, the father of the deceased borrowed some money from appellant. He also proved by the officers that at the time they arrested him he said he had killed the best friend he had.

The court in his charge instructed the jury on the law of murder with and without malice and on self-defense, to which no objections were made.

By bills of exceptions Nos. 1 and 2 he complains (1) of the testimony of the sheriff describing the location of the scene of the homicide, the roads leading to it, the condition of the ground, the physical facts as they appeared the next morning, and (2) he complains of the sheriff's testimony describing the location of the wounds on the body of the deceased as they appeared on the following morning. Testimony of a similar nature from other sources was introduced without objection. Appellant does not question the admissibility of it, but objected thereto because of its source, it being given, as above noted, by the sheriff. We are not aware of any rule of evidence which makes a distinction between officers and private citizens. If the testimony is otherwise competent and relevant, it is admissible whether it be given by an officer or a private citizen.

Bill of exception No. 3 complains of much testimony given by Johnnie Isom, recounting her relationship with appellant, his treatment of her, and of the threats made by him against the deceased and the entire Isom family about a month prior to the homicide. This bill is too general; it shows a blanket objection to all of said testimony, whereas the threats testified to by her were clearly admissible because antecedent threats directed against the deceased are always admissible to show malice. See Sebastian v. State, 41 Texas Crim. Rep. 251; Section 2072, p. 1166, Branch's Penal Code. Therefore, since the objection to the testimony is general it can not be considered. If he had any legal objection to any of the other part of her testimony, he should have pointed it out and addressed his objections thereto. See McKinney v. State, 80 Texas Crim. Rep. 31; Davis v. State, 83 Texas Crim. Rep. 539 (545).

By bill of exception No. 9 appellant complains of the testimony of Lillian Tullos as to what she told Johnnie Isom in the

presence of her parents and brother. This testimony was admissible because the record shows that appellant sent Kattes and Lillian Tullos to the Isom home and instructed them how to go, what to say and do, etc. Since these instructions were carried out by them, they were his agents, working under specific instructions from him, and he is bound thereby unless it should be made to appear that they acted contrary to his instructions.

By bills of exceptions Nos. 18 and 19 appellant complains of the testimony of Jim Carrigan to the effect that about two weeks prior to the homicide he went with appellant in a car to Will Nast's pasture adjoining the premises of Isom; that near the gate leading into Isom's pasture they parked the car and the witness went to the Isom home, while appellant remained in the pasture. That when he returned to the car, accompanied by Floyd Isom, he saw appellant sitting in the bushes with a pistol in his hand.

We are of the opinion that this testimony was admissible as tending to show appellant's state of mind, his ill-will and animus toward the members of the Isom family, the ones who might possibly interfere with his improper relations with Johnnie Isom. See Sanford v. State, 185 S. W. 22; Cole v. State, 243 S. W. 1100.

By bill of exception No. 21 appellant complains of the testimony given by Mrs. Doran, showing that on the evening of the day of the alleged homicide she was working for the telephone company as operator in San Saba. That appellant called her over the telephone and said: "This is Omer Smith; I want you to tell Will Doran not to come after me tonight. I have killed two sons-of-b——s and I am going to get the third one before morning." Appellant objected thereto on the ground that it occurred after the killing of the deceased; that it was no part of the res gestae, and prejudicial.

We think this testimony clearly admissible as an admission of what he had done and what he intended to do, and showed malice, hatred, ill-will, and a heart devoid of social duty and fatally bent upon mischief. Black v. State, 8 Texas Crim. App. 329.

By bill of exceptions No. 28 appellant complains of the action of the trial court in overruling his motion for a new trial based upon the misconduct of the jury, in that they considered his failure to testify. The State contested his motion and at the hearing the court heard the testimony of the members thereof. It appears that one juror testified that some member

of the jury remarked that he wished there was a law to make a defendant testify. Another member replied that he had seen in some newspaper that such a bill was going to be offered by some representative. This same juror testified that the jury retired about 2:30 P. M.; that they elected a foreman and then took a ballot and that all of them voted "guilty." That they then voted on the penalty to be assessed; that five voted for death and seven for life imprisonment. That this all occurred within 15 or 20 minutes after they had retired. That no juror at any time voted for a less penalty than life imprisonment. That the mention of the matter complained of occurred after they had voted as above stated. Nine of the jurors testified that appellant's failure to testify was not mentioned or alluded to in the jury room.

We do not think that this was such comment or discussion of appellant's failure to testify as would justify a reversal of this case. However, the testimony at best but raised an issue which the court determined adversely to appellant, and the court's conclusion is binding upon this Court unless it is made to appear that the trial court abused his discretion, and no such abuse appears.

We have carefully examined and considered each of appellant's other bills of exceptions and found them to be without merit. To have discussed each of them would have served no other purpose than to uselessly extend the opinion.

Finding no error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant in his motion again complains of the testimony of the sheriff as to what he found on the ground where the fatal difficulty occurred in that same was prejudicial and inflamed the minds of the jury. Most of the State's proffered testimony is usually prejudicial to the appellant, otherwise much of it would be inadmissible. If such testimony be true, and have a tendency to inflame the minds of the jury, the appellant was to blame for the commission of the act that engendered such in the jury's mind.

The testimony complained of in bills of exceptions Nos. 3, 4, 5 and 6, all relating to the conduct of the appellant with Johnnie Isom, the sister of the deceased, and her testimony relative thereto, it seems to us, is relevant to the whole case. It shows the reason and motive for the acts that finally culminated in the death of Floyd Isom; it supplies a reason for appellant's appearance on the premises of the deceased's father; for his being armed thereon; for his threats relative to the whole Isom family, and especially for his threats against the deceased, and surely shows malice toward the persons whose duty it was to have protected Johnnie Isom from mistreatment at the hands of her alleged paramour. We also note from the court's qualifications that the appellant placed this in evidence on his cross-examination,—went into all this testimony more fully than was done by the State. We still think the testimony covered by these bills was legitimate and proper.

We also think that the testimony of the witnesses Kattes and Lillian Tullos was admissible to show malice, to evidence a heart regardless of social duty and fatally bent on mischief. Appellant had been warned to let this girl alone, and after having taken her from her home, and carried her all over that portion of the State, after having had an alleged mock marriage performed, after having chained her to a bed, and while there helpless, having beaten her severely, and after she had returned to the asylum of her father's home, he contrived this scheme to again possess himself of her, and while hiding in the brush he shot her brother and killed him. Such conduct savors rather strongly of a malicious motive, and seems to be admissible as tending to show such a motive, and especially does it show such when taken into consideration with the threat testified to by Johnnie Isom relative to her brother Floyd, the one he finally killed.

Appellant insists that bills 18 and 19 evidence serious error. These bills relate to the testimony of the witness Carrigan who testifies to having seen the appellant concealed on the senior Isom's land near the place from which he finally shot Floyd Isom, on another and different occasion, and that the appellant held a pistol in his hand at such time. It seems to us that this testimony was admissible to show that the appellant was lying in wait, not only once but twice, for the purpose of repossessing himself of Johnnie Isom, and was in a position at such time to carry out the threat testified to by Johnnie Isom when she said: "He [appellant] said that he knew Dick [Floyd], my brother, would take up for me and help me, but that he would kill my

whole family, Dick included, if he had to slip up to the window and shoot us through the window light." We see no error in allowing this witness to testify to this previous transaction, connected up as it is with the actual scene of the killing, and occurring about two weeks prior thereto.

Appellant next complains of the testimony of Mrs. Will Doran relative to a telephone conversation supposedly had with appellant the night of the homicide. She testified that she had such conversation with a person who said his name was Omer Smith, and that she recognized the voice as that of Omer Smith; that it sounded like Smith's voice, although she could have been mistaken, and that he said " 'Who is this,' and I answered San Saba again. Then he wanted to know which one it was and I said 'this is Vada Lee.' Then he said, this is Omer Smith, and I want you to tell Will Doran not to come after me tonight. I have killed two son-of-a-bitches and I am going to get the third one before morning." Mrs. Doran, while the wife of the sheriff, was serving as a telephone operator at such time.

Mrs. Doran testified, in part, on cross-examination as follows: "I don't know how many times I have heard Omer Smith's voice prior to that time. I don't suppose I had heard it so many times but I judge I had heard it fifteen or twenty times. * * * When I first heard his voice I thought it sounded like Omer Smith. * * * The person who called me told me he was Omer Smith. I thought it was his voice all of the time but of course I could be wrong about that. It sounded like Omer Smith to me. Of course, I could be mistaken about a voice over the telephone. * * *. "

"Evidence of a telephone conversation is competent where the identity of the parties thereto is established." 18 Tex. Jur., p. 83. In Stepp v. State, 31 Texas Crim. Rep. 349, 20 S. W. 753, appears the following: "The appellant further complains that the court erred in admitting statements of the defendant made over the telephone. Dr. McCollum testified that he knew and distinguished defendant's voice, and that was all that was necessary." Identification is always a matter of best judgment or impression. In Morse v. State, 106 Texas Crim. Rep. 520, 293 S. W. 568, we held that upon the question of identity a witness might state his belief, impression or his best judgment, and the fact that he was not positive in his identification goes to the weight of the testimony and is for the jury. See Miskell v. State, 128 Texas Crim. Rep. 213; also Price v. State, 35 Texas Crim. Rep. 501. It occurs to us that the identification of appellant's voice herein is as full and satisfactory as such

can be made, and taken in conjunction with the statements in such conversation, it is as complete as any identification by voice can be made. It seems to us that the objection to such testimony goes to the weight rather than to the admissibility thereof.

We have thus written at length on account of the insistence of appellant's attorney as well as the gravity of the punishment, and our conclusion is that we were correct in our original opinion and the disposition therein made hereof. The motion for rehearing will therefore be overruled.