## N. B. GENTRY V. STATE

No. 34,315.   February 28, 1962
Motion for Rehearing Overruled April 18, 1962
Second Motion for Rehearing Overruled May 23, 1962

*Richard W. Davis, Glenn W. Lewis,* and *William Davenport,* all of San Angelo, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for murder; the punishment, 10 years in the penitentiary.

The State's testimony shows that on the day in question, as the witness, George Winham, was crossing the Oakes Street bridge over the Concho River in the City of San Angelo around 6:30 P.M. in his automobile, he saw two men standing on the bridge near the railing facing each other. The men appeared to be tussling and, as the witness passed, he observed one pushing the other and saw one of the men go over the side of the bridge. The man remaining on the bridge, who was wearing a two tone coat and a felt snap-brim hat, then looked over the bridge railing and proceeded to walk fast from the bridge. The witness then drove to his home and reported the incident to the police.

The proof shows that in response to the call, the police went to the scene where the dead body of the deceased was recovered from the water near the bridge. The deceased, on such date, lacked only a few days of being seventy years of age. An autopsy performed upon the deceased by Dr. Raleigh Trotter, a pathologist, disclosed various bruises on the forehead, the right side of the chest and at the base of the neck, several broken ribs and a rupture of the blood vessel to the left of the breast bone where the collar bone connects and a considerable amount of hemorrhage extending downward into a space between the lungs and heart. The cause of death of the deceased was expressed by Dr. Trotter as severe trauma from the injuries, superimposed upon ill health which the deceased was suffering.

It was shown by the testimony that on the evening in question the appellant and the deceased had been together drinking beer in two cafes. Both were under the influence of intoxicating liquor.

Around 6 P.M. they left the Coney Island Cafe together which was two blocks from the Oakes Street bridge. Forty minutes later appellant returned to the cafe and said to the witness Scott "You think I ain't going to drown them all this morning, every son-of-a-bitch before morning, you just read the papers" and at the time stated he was going to chloroform Scott.

Around 10 P.M. the officers went to appellant's residence on North Oakes Street. At such time appellant was at home and accompanied the officers to the police station. When leaving the house appellant picked up a hat and coat and brought them to the police station. The hat and coat were introduced in evidence as exhibits by the State. Appellant, when wearing the hat and coat, was identified by the State's Witness Winham later that night at a police lineup and at the trial as looking like the man who he saw on the bridge on the night in question.

Appellant did not testify but called Chief of Police Melvin James who testified that he observed appellant's hands on the night of his arrest and that they appeared to be normal.

The court submitted to the jury in his charge the issues of appellant's guilt of murder with malice and of aggravated assault. The issues of accident and cause of death were also submitted and the jury was instructed on the law relative to circumstantial evidence.

The jury by their verdict resolved the issues against appellant and we find the evidence sufficient to sustain their verdict.

Appellant predicates his appeal upon two main contentions.

He first contends that the court erred in admitting, over his timely objection, the testimony which showed that when appellant returned to the cafe on the evening in question he stated that he was going to drown "every son-of-a-bitch before morning" and that he was going to chloroform the witness Scott. Appellant insists that the admission of such testimony was in violation of the rule that evidence of antecedent threats made by an accused is not admissible unless the threats were directed against the deceased or a class of persons which included him.

It is the State's contention that the testimony was admissible to show the condition of appellant's mind at the time of the killing and to show guilty knowledge on the part of appellant that he had just thrown someone in the river.

While the rule relied upon by appellant with reference to the admissibility of evidence of antecedent threats made by an accused is correct, such rule has no application in the present case to the statements made by appellant after the killing.

Art. 1257a, V.A.P.C. provides in part as follows:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed."

In 4 Branch's Ann. P.C., par. 22.40, page 599, it is stated:

"The relevant declarations or statements of the defendant made before or after the homicide or difficulty in question, which are a part of the res gestae, or which show or tend to show motive, intention, *state of mind, malice,* premeditation, animus, or ill will toward the deceased, or which explain his purpose or refute his explanation, are admissible against him." Authorities cited.

In Flores v. State, 151 Texas Cr. Rep. 478, 209 S.W. 2d 168, it was held that evidence of the acts and conduct of the accused after the killing was admissible to show malice, intent and condition of his mind at the time of the killing.

In the instant case appellant's statements were made at the cafe some forty minutes after the killing and were admissible as bearing upon the condition of his mind at the time of the killing. His statements at the cafe clearly showed a heart regardless of social duty and fatally bent on mischief and were admissible upon the issue of malice.

The evidence of appellant's statement at the cafe relative to his "going to drown" people was also admissible on the question of his identity to prove that it was he who had killed the deceased and pushed him over the railing of the bridge into the water. McGee v. State, 31 Texas Cr. Rep. 71, 19 S.W. 764; LaGrone v. State, 61 Texas Cr. Rep. 170, 135 S.W. 121 and Smith v. State, 135 Texas Cr. Rep. 327, 119 S.W. 2d 1039.

In admitting such testimony the court did not err.

Appellant next insists that the court erred in overruling his motion to quash the indictment.

Appellant alleged in the motion that the indictment was insufficient because it did not describe with sufficient certainty the instrument used in committing the offense or allege that the nature of the instrument was to the Grand Jury unknown and that the indictment was ambiguous, uncertain, and confusing.

The indictment charged that appellant killed the deceased by "striking him with some instrument and in a manner and means to the Grand Jury unknown".

While the instrument was not described, the indictment charged in substance that appellant killed the deceased in some manner and by some means, instrument or weapon to the Grand Jury unknown. Such an allegation is sufficient. 29 Texas Jur. 2nd, par. 128, page 150; Walker v. State, 94 Texas Cr. Rep. 414, 251 S.W. 235; Bookman v. State, 112 Texas Cr. Rep. 233, 16 S.W. 2d 123 and Stanley v. State, 120 Texas Cr. Rep. 450, 48 S.W. 2d 279.

Proof was offered by the State that the Grand Jury which returned the indictment against appellant was unable to determine the instrument used in the killing or the manner and means the instrument was used in striking and killing the deceased.

In overruling the motion to quash the indictment the court did not err.

The bills of exception appearing in the record have been examined and do not present reversible error.

We commend appellant's court appointed counsel upon the discharge of their duties in both the trial court and on the appeal before this Court in such a capable and scholarly manner.

The judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Presiding Judge.

Appellant complains of our disposition of his contention that the trial court erred in overruling his motion to quash the indictment. He urges that there is quite a difference between the allegation that the deceased was killed by "striking him with some instrument and in a manner and means to the grand jury unknown" and the approved form of indictment alleging that the defendant killed the deceased in some manner and by some means, instrument or weapon to the grand jury unknown.

We have again examined the indictment, and the motion to quash, in the light of appellant's motion for rehearing.

The first ground of the motion to quash reads: "The indictment is duplicitous in that same charges N. B. Gentry 'did then and there unlawfully and willfully and voluntarily with malice aforethought kill H. A. Daniel by striking him with some instrument' and in the same count charged the defendant 'did then and there unlawfully and willfully and voluntarily with malice aforethought kill H. A. Daniel in a manner and means to the Grand Jury unknown'. "

This appears to be a proper construction of the indictment, but we do not agree that the motion to quash should have been sustained.

An indictment for murder may, in a single count, allege jointly different means of killing without rendering the indictment duplicitous. Corona v. State, 108 Texas Cr. Rep. 317, 300 S.W. 79; Whiteside v. State, 111 Texas Cr. Rep. 116, 12 S.W. 2d 218; Stanley v. State, 120 Texas Cr. Rep. 450, 48 S.W. 2d 279; 29 Texas Jur. 2d, Homicide, Sec. 128, at p. 152.

We remain convinced that this appeal was properly disposed of on original submission.

Appellant's motion for rehearing is overruled.